**PROTEST OF BLEDSOE et al.**

No. 22627. Opinion Filed May 3, 1932.

Supplemental Opinion on Rehearing Jan. 7, 1933.

230

Gordon Stater, for protestants.

W. L. Coffey, Co. Atty., Hugh Webster, Asst. Co. Atty., R. P. Colley, City Atty., E. M. Gallaher, Asst. City Atty., and Ed Cassidy, for protestee.

ANDREWS, J. This is an appeal from a judgment of the Court of Tax Review as to certain tax levies for the fiscal year commencing July 1, 1930. The protestant appealed from the judgment as to certain of the levies and the protestee appealed from the judgment as to certain of the levies.

The protestant contends that the Court of Tax Review erred in denying its protest as to .1396 mill of the Tulsa county highway fund. Its contention is based largely upon a misapprehension of the question before the Court of Tax Review. That court did not consider how much money the county could spend for highway purposes. It considered the rate of levy to be made for the county highway fund. The estimate of needs in the sum of $25,000 was regular; it was sufficiently itemized, and the rate of levy based thereon is legal. Whether or not the amount estimated to be needed was in fact needed was a question for the municipal officers, and not a question for the excise board or for the Court of Tax Review. The protestant contends that the appropriation was illegal for the reason that no contract for the construction of the bridge was entered into until November 25, 1930. That contract would have been illegal had it been entered into prior to the making of the appropriation. The appropriation must be made before the contract may be entered into. We find no error in the judgment of the Court of Tax Review as to that item, and it is affirmed.

The protestant contends that the Court of Tax Review erred in denying its protest as to .149 mill of the Tulsa county sinking fund. The financial statement shows in the asset column as of June 30, 1930, opposite "Cash on Hand," $37,483.21. The figures are in red. It is agreed that that amount was not an asset but a deficit. It is explained by the auditor for the county. who testified that the county sinking fund contained investments on which the county could not realize and that the county treasurer borrowed cash from the general cash

account and used it to pay the sinking fund obligations to the fiscal agency during the fiscal year commencing July 1, 1929. An attempt was made to show that the deficit was due to the failure of the county treasurer to apportion taxes collected. The effort failed when it was admitted that the apportionment was made. Another effort to explain the deficit was made by showing that the disbursements exceeded the income for the fiscal year. That is no explanation, for the income to a sinking fund for a fiscal year during which bonds are paid will always be less than the amount of disbursements for that fiscal year, for the income will be based on a percentage of the amount of the bonds and the entire amount of the bonds will be due and payable. An examination of the record discloses that a deficit existed in the sinking fund by reason of the payment of more money from that fund than the receipts to that fund, but the fact that there was such a deficit does not authorize a rate of levy for sinking fund purposes. The trouble in this case arose from the fact that the financial statement was erroneously prepared. If the item in question had not been included in the asset column and if it had been included in the liability column, it would have shown a liability for money borrowed and used for the payment of charges against the sinking fund. When so prepared, it would have been clear that no levy for the amount of the deficit could be made. This court has repeatedly held that a deficit existing in a sinking fund by reason of a failure to levy sufficient tax during prior years may not be considered in determining the rate of ad valorem taxation for sinking fund purposes for a current fiscal year. In re Protest of Chicago, R. I. & P. Ry. Co., 143 Okla. 161, 288 P. 337. The same rule is applicable where a deficit exists by reason of a loss to a sinking fund from any cause. A different rule is applicable to sinking funds from that applicable to other funds. Where there is a deficit in a sinking fund caused by a failure to collect taxes during the year immediately preceding that for which a levy is to be made, that deficit is balanced by the inclusion in the asset column of the financial statement for that year of the amount of the net taxes for that year in process of collection. The record shows an attempt to secure a rate of levy of ad valorem taxation for sinking fund purposes to supply a deficit in the sinking fund. That cannot be done. The Court of Tax Review was in error in denying the protest as to the item in question.

We want again to call attention to the fact that there is but one sinking fund for a municipality recognized by our statute. There is no provision of law for a separate sinking fund for each bond issue or each judgment. All outstanding bonded and judgment indebtedness is considered together and one sinking fund is created for the payment of the interest and the principal of all outstanding bonded and judgment indebtedness of a municipality. In re Tax Levies of City of Woodward, 143 Okla. 204, 288 P. 458.

The protestant contends that the Court of Tax Review erred in denying its protest as to 1.0374 mills of the Tulsa city general fund. In determining the rate of levy for the fiscal year commencing July 1, 1929, estimated receipts to the city general fund from automobile tax were considered and the amount of the estimated receipts from that source was used to increase the amount of the appropriation for the city general fund, but when the money so estimated was actually collected by the city, it was applied to the street and alley fund. At the end of that fiscal year there was a balance in that fund which arose from automobile taxes and penalties on ad valorem taxes. The protestant contends that that balance should have been considered in determining the rate of levy for the general fund of the city for the fiscal year commencing July 1, 1930. The protestee contends that that balance should not have been so considered and that that balance should remain in the street and alley fund. We are not reviewing the rate of levy for the fiscal year commencing July 1, 1929, and though that rate of levy was excessive, it may not be considered herein. We are herein confronted with only two questions: First, should the balance in the street and alley fund be accounted for in any fund; and second, should it be considered in determining the rate of ad valorem tax levy for the general fund? The first question is answered by the plain and unambiguous provisions of the Constitution (section 30, art. 10) and of the statutes. Section 9697, C. O. S. 1921. It was so held in Re Bliss, 142 Okla. 1, 285 P. 73. The second question is more serious. In support of its contention the protestee relies on the provisions of chapter 173, Session Laws 1915, and chapter 167, Session Laws 1925. By the provisions of the 1915 act, supra, a county treasurer is authorized and directed to pay to the treasurer of any city of the first class or operating under a charter form of government in the county, 25 per cent. of the amount of all fees collected by the treasurer from the Department of Highways and which had been paid by residents of the city on motor vehicles owned by residents of the city. There is nothing therein as to the purpose for which

the city shall use the amount so collected. By the provisions of the 1925 act, supra, such receipts are to be credited to the street and alley fund. There is thereby created a special fund, which, under the decisions of this court in Atchison, T. & S. F. Ry. Co. v. Johnson, 85 Okla. 161, 204 P. 910, and Atchison, T. & S. F. Ry. Co. v. McCurdy, 86 Okla. 148, 207 P. 321, may not be used for any other purpose. It is not a part of the general fund, and since the Legislature has specifically provided the purpose for which it may be used, the balance in that fund may not be considered in determining the rate of ad valorem tax levy for general purposes of a city, in the absence of a tax levy for street and alley purposes. On the other hand, if an appropriation is requested for street and alley purposes, and a rate of tax levy for that purpose or including that purpose is made, it must be made after considering the balance on hand in the street and alley fund for the purpose of reducing the rate of ad valorem tax levy for the street and alley fund. Under the state of the record we find no error in the judgment of the Court of Tax Review, and that judgment is affirmed.

The protestant contends that the Court of Tax Review erred in denying its protest to .19 mill of the Tulsa city sinking fund. The record shows a situation similar to that shown in the county sinking fund, that is, a deficit existed which was caused by a disbursement of more money from the sinking fund than its receipts. We think that we have sufficiently discussed the question herein. The Court of Tax Review was in error in denying the protest as to that item and its judgment is reversed.

The protestee appealed from an adverse judgment as to .7868 mill of the county general fund. The record shows that during the fiscal year commencing July 1, 1929, there was disbursed from the county general fund for that year the sum of $64,950.47 more than the amount that accrued to that fund during that fiscal year from all sources. As testified to by the auditor for the county, the county overdrew the cash account for that fiscal year to the amount of $64,950.47. During that fiscal year the county treasurer transferred on his cash books the sum of $130,000 from the funds held by him from tax collections for prior fiscal years to the cash account for that fiscal year. The explanation therefor was that the amount so transferred was a free surplus, that is, money on hand to the credit of tax collections for prior fiscal years against which there were no outstanding claims. A county treasurer has no authority to make such a transfer. That

transfer was not only made on the cash books of the county treasurer, but $64,950.47 of the amount so transferred was used by the county treasurer for the payment of the warrants hereinabove referred to.

On the financial statement as of June 30, 1930, opposite the item "Cash on Hand—Current Funds" there was shown in red the amount of $64,950.47, and opposite the item "Free Cash Surplus — Back Years Funds" there was shown $169,430.60. Among the liabilities there was shown thereon "Warrants Unpaid—1929-30 Series," $124,846.61. The surplus was shown to be $34,169.74. The surplus shown thereon was correct, but the method used in computing that surplus was erroneous. There was no "Cash on Hand—Current Funds" and there was not a "Free Cash Surplus—Back Years Funds" in the amount of $169,430.60. The amount of "Free Cash Surplus—Back Years Funds" was $104,480.13. The financial ledger shows the surplus for back years to be $170,000.47, but of that sum $64,950.47 had been used to pay warrants during the fiscal year and $569.89 had been used to pay interest on warrants during that fiscal year. The balance of $104,480.13 should have been shown opposite "Free Cash Surplus—Back Years Funds." If the erroneous transfer made by the county treasurer is disregarded, the item "Free Cash Surplus—Back Years Funds" will be $169,430.60, and the item "Warrants Unpaid—1929-30 Series" will be $189,797.08 ($124,846.61 unpaid warrants plus $64,950.47 illegally paid warrants). The surplus will be $34,169.74.

There is considerable discussion in the briefs as to the portion of the testimony showing the balance in the fund for the fiscal year to be $90,049.53 and the balance therein for prior years to be $15,000.47. The testimony with reference thereto was verbal and the portion of the financial statement showing those items was not included in the case-made. It will be noted that the total of those two items is $105,050. Evidently the witness, in giving those figures, did not consider the $569.89 that had been expended for interest. When that item is deducted, the balance is $104,480.11. The difference of two cents between that amount and the correct balance of $104,480.13 is no doubt due to an error either of the witness or of the reporter.

The protestee contends that the $64,950.47 was illegally expended and that that amount should be considered as cash on hand in the financial statement. In support thereof it cites Protest of Chicago. R. I. & P. Ry. Co., 142 Okla. 242, 286 P. 316. The correct rule is therein stated. That rule is that the

balance on hand from taxes collected on a levy made for the fiscal year 1924, after the payment of all legal charges against that fund, should be credited in determining the amount of the balance on hand at the end of the fiscal year 1927, and that no part thereof may be used or reserved during the fiscal year 1927 to pay outstanding warrants for the fiscal years 1925 and 1926. In order to clarify the rule, we now state that no part thereof may be used or reserved to pay outstanding warrants for the year 1927, but at the end of the fiscal year 1927, this balance may be shown on the financial statement as a part of the assets, and the unpaid warrants for the fiscal year 1927 may be shown thereon as a liability. In other words, the excise board, pursuant to the provisions of section 9699, supra, deducts the amount of any surplus balance of revenue or levy "ascertained to be on hand from the previous fiscal year or years" in determining the rate of levy to be made, and it fixes the rate of levy after having deducted that surplus balance. By the making of the appropriations and the fixing of the rates of levy, the surplus balance of revenue or levy ascertained to be on hand from the previous fiscal year or years is transferred from the fund for the previous fiscal year or years to the fund for the new fiscal year. The transfer is made in that manner and by that authority and it may not be lawfully made in any other manner or by any other authority. That was the practice followed in the case at bar. We are herein considering the correctness of the financial statement of the county general fund as of June 30, 1930, for the purpose of determining the amount of money necessary to be raised by ad valorem taxation for the estimated needs of the county for general fund purposes for the ensuing fiscal year. In determining the amount of cash on hand, we may consider the amount of surplus cash for all prior years. When so considered, the true surplus was, as shown by the financial statement, $34,169.74.

While this court has said that an illegal transfer of funds must be disregarded and the amount thereof considered as cash on hand in the fund from which it was transferred, we did not intend to hold that any amount should be considered as cash in a fund when that amount of cash was not on hand in that or any other fund. We held to the contrary, in Bristow Battery Co. v. Payne, 123 Okla. 137, 252 P. 423, and Gulf, C. & S. F. Ry. Co. v. Excise Board, 141 Okla. 34, 283 P. 1003. Lest there be further misapprehension in regard to this question, we desire to state that if an amount is illegally transferred from one fund to another,

the amount of cash on hand in the second fund, not exceeding the amount illegally transferred, may be considered by the excise board as in the fund from which the illegal transfer was made, for the purpose of restoring to the first fund the amount that belongs in it; but where an illegal transfer of funds has been made and there is no cash on hand in the fund to which the illegal transfer was made, neither the excise board nor any court may direct that there be considered as cash on hand in the first fund any part of the amount illegally transferred therefrom. A financial statement must show the true and correct financial condition.

We find no error in the rate of levy for the county general fund as computed by the excise board. The Court of Tax Review was in error in sustaining the protest and for that error its judgment is reversed.

The protestee contends that the Court of Tax Review erred in sustaining the protest to .0439 mill of the county highway levy. It appears from the record that the excise board, in computing the rate of levy for county highway purposes, deducted from the amount of the appropriation for the current fiscal year for that purpose, as probable income during that year from sources other than ad valorem taxation, the sum of $40,593.17, which was the sum that had been estimated would be received from the State Treasurer as the county's part of the one-fourth mill state ad valorem tax levy for the current fiscal year pursuant to the provisions of section 10204, C. O. S. 1921, that amount being the amount actually received from that source during the last preceding year. The protestant contended, and the Court of Tax Review held that there should have been deducted therefrom the sum of $49,248.45, the amount that would be produced by the one-fourth mill levy for the current year. A state levy of one-fourth mill for county highway purposes is required to be made by general law. Section 10204, supra, and subdivision (f), sec. 8, ch. 48, Session Laws 1923-24. That levy was made for the current fiscal year. In Atchison, T. & S. F. Ry. Co. v. Johnson, Co. Treas., supra, it was held that the estimated proceeds of a tax so levied should not be deducted from the amount of the estimate for the needs of the county as probable income from sources other than ad valorem taxation in determining the rate of levy for county highway purposes. The reason for that conclusion is apparent; for, by the provisions of section 9699, C. O. S. 1921, there may be deducted as probable income only the amount of probable income "other than

ad valorem taxation." The proceeds of a one-fourth mill state levy for county highway purposes is not income "other than ad valorem taxation." It is income from ad valorem taxation.

Under the procedure for the making of county levies (section 9699, supra), the excise board must determine the total of the several items of appropriation for county highway purposes. To that amount ten per cent. is added for delinquent taxes. The amount of any surplus balance of revenue or levy ascertained to be on hand from the previous fiscal year or years, together with the amount of probable income to the county highway fund from all sources other than ad valorem taxation, not exceeding the amount of collections from those sources for the previous fiscal year, is deducted therefrom. The balance is the amount required to be raised by ad valorem taxation.

In the enactment of section 9699, supra, the Legislature did not consider the provisions of section 10204, supra, and no provision was made therein for the disposition of the proceeds of the tax levied pursuant to the provisions of section 10204, supra. If a state levy of one-fourth mill for county highway purposes is made and a county levy for the total estimated needs for county highway purposes is made, there will be a total tax for county highway purposes in excess of the needs of the county for county highway purposes. Such a tax would be illegal as excessive, for any tax levied in excess of that required for the needs of a municipality for a fiscal year is illegal and void. Ryan, Co. Treas., v. Bass Furn. Co., 113 Okla. 86, 241 P. 786, and an unbroken line of prior and subsequent decisions of this court. Notwithstanding the failure of the Legislature to include a provision in section 9699, supra, with reference to the state levy of one-fourth mill for county highway purposes, the amount produced by that levy must be considered by the excise board in determining the rate of ad valorem taxation for county highway purposes, not only that the total tax levied for county highway purposes may not be in excess of that required for the needs of the municipality for the fiscal year, but for the further reason that the amount of the proceeds of the one-fourth mill state levy can be of no benefit to the county unless the amount thereof is included in the amount of the appropriation for county highway purposes, for, unless it is so included, warrants may not be drawn or claims contracted against it. Section 8635, C. O. S. 1921. We hold that from the total of the several items of the appropriation for county highway purposes, with ten per cent. added thereto for

delinquent taxes, there shall be deducted the amount that will be produced by the one-fourth mill state levy for county highway purposes, and that thereafter the deductions required by the provisions of section 9699, supra, shall be made. Such was the effect of the decisions in Protest of Murray, 140 Okla. 240, 285 P. 80, and St. L.-S. F. Ry. Co. v. Bonaparte, Co. Treas., 142 Okla. 177, 286 P. 343.

The protestee contends that there should be deducted from the amount of the proceeds of the one-fourth mill levy 20 per cent. for delinquent taxes, as provided by section 9690, C. O. S. 1921. The provisions of that section are not applicable. The applicable provisions are section 8633, C. O. S. 1921, and section 9699, supra. They are given effect by the addition of ten per cent. for delinquent taxes to the amount of the appropriation.

There was no reversible error in the judgment of the Court of Tax Review as to the county levy for county highway purposes, and that judgment is in all things affirmed.

The protestee contends that the Court of Tax Review erred in sustaining the protest to the .25 mill free fair levy.

There was a failure to comply with the provisions of chapter 159, Session Laws 1925, as amended by chapter 242, Session Laws 1929, and the Court of Tax Review held that the certified rate of levy was illegal and void for that reason. By the provisions of those statutes, the board of directors of a free fair association are required to certify their estimate to the board of county commissioners. That was not done. The estimate made by the board of county commissioners for free fair fund was not itemized and the excise board did not cause any publication thereof to be made. There was not even a substantial compliance with the requirements of the statutes, and the rate of levy was without authority of law and is void. The judgment of the Court of Tax Review sustaining the protest is in all things affirmed.

The protestee contends that the Court of Tax Review erred in sustaining the protest to .0156 mill of the Tulsa city cemetery fund levy, .1497 mill of the Tulsa city library fund levy, .129 mill of the Tulsa city park fund levy, and .2773 of the Tulsa city general fund levy. As to the first three levies it contends that no itemization was necessary. As to all four of the levies it contends that the itemization was sufficient. Such contentions were made and settled by the decision of this court in Jones, Co. Treas., v. Blaine, 149 Okla. 153, 300 P. 369.

We adhere to the holding in that case. We did not hold therein that an appropriation could not be made for sundry contingent expenses. We do not so hold now. We held therein that an appropriation for sundry contingent expenses may not be made in an amount disproportionate to the appropriations for other legal purposes. We hold to the same effect now. Whether or not the amounts of the appropriations for sundry contingent expenses for the several funds were disproportionate to the appropriations for other legal purposes was a mixed question of law and fact to be determined by the Court of Tax Review. Those amounts were $2,125 for the cemetery fund, $20,384.62 for the library fund, $17,564.77 for the city park fund, and $37,760 for the general fund. We think that the Court of Tax Review scarcely could have held otherwise. The protestee contends that, being a chartered city, it is not subject to the provisions of sections 9695, 9697, and 9698, C O. S. 1921, requiring itemization. We cannot so hold. See Oklahoma News Co. v. Ryan, Co. Treas., 101 Okla. 151, 224 P. 969, Ryan, Co. Treas., v. Roach Drug Co., 113 Okla. 130, 239 P. 912, and Jones v. Kennedy, 118 Okla. 224, 247 P. 53. The protestee relies on the decision of this court in Protest of Chicago. R. I. & P. Ry. Co., 146 Okla. 23, 294 P. 169. Therein was involved a drag fund for a township. As stated by a member of the Court of Tax Review in considering the issue, "It is very easy to circumscribe a drag fund, but a park fund can be anywhere from an elephant to a rhinocerous." We think that that statement shows the distinction between the facts in this case and the facts in the case relied upon by the protestee. Estimates for cemetery, library, park, and general fund purposes must be itemized without regard to whether or not the city operates under a charter. That requirement may not be avoided by including a large amount under the heading of sundry contingent expenses. The judgment of the Court of Tax Review as to those levies is in all things affirmed.

The protestee contends that the Court of Tax Review erred in sustaining the protest to 1.449 mills of the Tulsa city sinking fund levy. The record shows that the treasurer's cash account showed cash on hand in the sinking fund to the amount of $32,504.15 more than was shown in that fund on the financial statement. The protestant contends that the amount shown on the treasurer's cash book was the correct amount in the sinking fund. The protestee contends that the amount shown on the financial statement was correct. The protestee attempts to explain the difference in the two amounts

by stating that money had been erroneously apportioned to the sinking fund and credited to that fund on the treasurer's cash account; that the city caused an audit to be made; that the financial statement showed the corrected balance suggested by the report of the auditor, and that the correct amount of cash assets was shown on the financial statement. The Court of Tax Review found against that contention and in favor of the protestant.

A financial statement must reflect the true fiscal condition of the municipality as of the close of the fiscal year for which it is made, and, as stated in Re Protest of Trimble, 151 Okla. 74, 300 P. 406, and Aaronson v. Smiley, Co. Treas., 142 Okla. 29, 285 P. 59, the true fiscal condition as of that date must be ascertained preliminary to the determination of the rate of levy of ad valorem taxation for the ensuing fiscal year. The true fiscal condition of the Tulsa city sinking fund was a question of fact before the Court of Tax Review. We cannot say that its judgment is against the clear weight of the evidence. While there was some testimony as to an audit by a firm of public accountants, and while that testimony tended to show that money had been erroneously apportioned to the sinking fund that should have been apportioned to other funds, the Court of Tax Review was not required to base its judgment on that testimony to the exclusion of the treasurer's cash account as shown on the treasurer's ledger. If the treasurer's cash account was not correct, the treasurer should have corrected the same. or there should have been a showing before the Court of Tax Review by competent evidence that the treasurer's account was not correct. We do not think that the evidence offered by the protestee was sufficient for that purpose. There was no error on the part of the Court of Tax Rview in sustaining the protest as to item No. 1. and its judgment is in all things affirmed.

With reference to item No. 2, $87,961.61, the record shows that money belonging to the sinking fund had been erroneously apportioned to other funds. The protestee contends that that money had been expended and that for that reason it could not be considered as an asset in the sinking fund as of June 30, 1930. The record shows that as of June 30, 1930, there was a total of cash assets of $95,847.76 in the general fund, park fund. library fund, and street maintenance fund. The protestee contends that there were outstanding warrants against those several funds which are proper charges against the cash in those funds, and that the balance of cash assets therein was only

$40,408.48. While we have held, as hereinbefore stated, that money may not be considered in a sinking fund which has been expended, that rule is not applicable herein, for here there are assets in the various funds exceeding the amount illegally apportioned to those funds, and the cash assets in those funds may be considered as a part of the sinking fund to which they belong. The outstanding warrants may not be charged against that cash, for they are not legal charges against cash assets which accrued from an illegal apportionment of money that properly belonged to another fund. Those warrants must be paid from the legal accruals to those funds and they may not be paid from money illegally apportioned thereto. We find no error in the judgment of the Court of Tax Review as to item No. 2, and that judgment is in all things affirmed.

With reference to item No. 3, $79,624.05, the record shows that the financial statement of the city showed the true fiscal condition of the city as of June 30. 1930, except as to the sum of $79,624.05, which was in the county treasury to the credit of the city, but which had not been transferred by the county treasurer to the city. That amount of money had been collected by the county treasurer and had been held by him as suspended pending the determination of tax protests. It had been released and apportioned during the fiscal year commencing July 1, 1929. The financial statement should have shown the amount thereof, but inasmuch as it was not in the hands of the city treasurer, it should not have been shown as cash on hand. Protest of Chicago, R. I. & P. Ry. Co., 151 Okla. 137, 1 P. (2d) 674. Inasmuch as it was estimated income, it should not be considered in fixing the rate of taxation for sinking fund purposes. It appears from the record that the city attorney confessed error and that the judgment of the Court of Tax Review was based upon that confession of error. We do not think that tax rates are dependent upon a confession of error of public officials, and, notwithstanding the confession of error of the city officials, the judgment of the Court of Tax Review is reversed.

With reference to item No. 4, $45,290.44, the protestee presents nothing that need be herein considered.

With reference to item No. 5, $9,000, the protestee contends that, in determining the amount to be raised by ad valorem taxation for sinking fund purposes, there should be considered municipal bonds that have been executed but not sold or delivered. It appears from the record that the bonds in

question had been executed, but had not been sold, and that they had not been canceled and destroyed as authorized by the provisions of sections 8603 and 8604, C. O. S. 1921. The Court of Tax Review held that, since the bonds had not been sold, they should not have been considered in determining the amount necessary to be raised by taxation for sinking fund purposes. Under the provisions of sections 26 and 27, art. 10, of the Constitution, before or at the time of the incurring of an indebtedness, a city is required to provide for the collection of an annual tax, in addition to the other taxes provided for by the Constitution, sufficient to pay the interest on the indebtedness as it falls due and also to constitute a sinking fund for the payment of the principal thereof. An indebtedness is not incurred by the execution of bonds but by the delivery of those bonds to a purchaser. No indebtedness had been incurred by the execution of the bonds in question. Since there was no outstanding indebtedness therefor, there was no necessity for considering those bonds in determining the rate of ad valorem taxation for sinking fund purposes. There was no error on the part of the Court of Tax Review and its judgment is affirmed.

The protestee presents three contentions as to the Tulsa city sinking fund, including all of the items hereinabove considered. It contends that the rate of levy for sinking fund purposes during prior years was based on the amount of accruals on outstanding bonds computed on the number of years for which the bonds were issued, and that the rate of levy for sinking fund purposes for the ensuing fiscal year was based on the amount of accruals on outstanding bonds computed on the number of years for which the bonds were issued, when the computation should have been made on the number of taxpaying years, as held in Jones, Co. Treas., v. Blaine, supra. It contends that if those computations had been made in that manner, the amount necessary to be raised for the sinking fund by ad valorem taxation would be increased in an amount sufficient to offset any error in the computation, as hereinbefore considered under separate items.

The effect of that contention is that there is a shortage in the sinking fund and that the rate of levy for the current fiscal year is insufficient by reason of the use of an erroneous method of computation. The protestee offered evidence in support of its contention and its offer was overruled by the Court of Tax Review.

The deficit existing in the sinking fund

by reason of a failure to levy sufficient tax during prior years may not be considered in determining the rate of taxation for ad valorem purposes for the current fiscal year. In re Protest of Chicago, R. I. & P. Ry. Co., supra. A more serious question exists as to the computation of the rate of ad valorem taxation for sinking fund purposes for the current fiscal year. That rate of taxation for sinking fund purposes must be computed in accordance with the rule stated in Jones v. Blaine, supra. The protestant contends that the Court of Tax Review may not order a rate of taxation for sinking fund purposes to be fixed in an amount greater than that required by the showing made in the financial statement and estimate of needs of the municipality. By the provisions of sections 26, 27 and 28, art. 10, of the Constitution, a sinking fund is required to be provided, and as to bonds issued pursuant to the provisions of sections 26 and 27, provision therefor is required to be made before or at the time of the incurring of the indebtedness. That sinking fund must be provided though the municipal officers made no estimate therefor. The provisions of our statute with reference to the power of the excise board must be construed in the light of those constitutional provisions. We think that the Court of Tax Review was in error in overruling the offer of evidence as to the computation of the accruals to the sinking fund for the current fiscal year. The excise board had or should have had before it a statement of the bonded indebtedness of the municipality, and it was the duty of the excise board to make the proper computation as to the amount of the accruals. If the excise board erred in the computation, it was the duty of the Court of Tax Review to make a proper computation therefor. The Court of Tax Review is directed to hear the evidence and if the computation as to the amount of accrual necessary to the sinking fund for the current fiscal year is shown thereby to be erroneous, the Court of Tax Review is directed to make an order directing the excise board to correct the error and to fix the rate of levy for sinking fund purposes in accordance with its corrected computation.

The protestee contends that there was further error in the computation of the rate of levy for sinking fund purposes in that there was deducted from the total requirements a sum for estimated income from sources other than ad valorem taxation. We so held in Protest of Trimble, supra. The protestant contends that that contention of the protestee was not made before the Court of Tax Review, and that this court will not consider contentions not presented to the Court of Tax Review. The cases cited are not applicable to proceedings wherein the correctness of a tax levy is presented to the Court of Tax Review. That court was established for the purpose of correcting erroneous tax levies. In our opinion, the Court of Tax Review was in error in fixing the rate of taxation for sinking fund purposes after considering estimated income from sources other than ad valorem taxation, and, upon a remand of this cause to that court, proper adjustment should be made therefor.

This court is not attempting to make an application of the rules herein stated to the facts shown by the record in this case. The Court of Tax Review is directed to apply those rules to the facts, to render its judgment, and to remand the various tax levies to the excise board, with directions to make the necessary corrections in the tax rolls.

LESTER, C. J., and RILEY, HEFNER, SWINDALL, and McNEILL, JJ., concur. CLARK, V. C. J., and CULLISON, J., absent. KORNEGAY, J., dissents.

---

Supplemental Opinion on Rehearing.

ANDREWS, J. In the opinion in this case the direction to the court of Tax Review was as follows:

"This court is not attempting to make an application of the rules herein stated to the facts shown by the record in this case. The Court of Tax Review is directed to apply those rules to the facts, to render its judgment and to remand the various tax levies to the excise board, with directions to make the necessary corrections in the tax roll."

On rehearing it is contended that certain warrants were issued by the various political subdivisions of the state, whose tax levies are involved in this action, after the beginning of the fiscal year involved herein and prior to the decision of this court in this case; that the incurring of the indebtedness for which those warrants were issued was not postponed by the provisions of Initiative Petition No. 100 or the amendment thereof, chapter 52, Session Laws 1929; that the rates of levy for the various purposes involved in this action for which no warrants were issued may be decreased and the rates of levy for those purposes for which the warrants were issued may be increased so as to provide a sufficient rate of levy for those purposes for which the warrants were issued to validate the warrants issued; that those warrants were lawfully issued, and that this court should require the excise board to fix rates of levy for the purposes for which the warrants were issued in amounts sufficient so that

the warrants so issued will not be invalid as in excess of the income and revenue provided for the fiscal year in question.

Upon a review of the petition for rehearing, we are of the opinion that the direction of this court to the Court of Tax Review in the opinion of this court should be extended. It is, therefore, ordered that the Court of Tax Review be, and it is hereby, directed, upon the remand of this case to that court, to proceed in accordance with the instructions given to that court in the opinion of this case, and, in addition thereto, to hear such evidence as may be offered in support of the allegations of the petition for rehearing herein, and, if the rates of levy for the various political subdivisions of the state involved in this action may be legally adjusted, under the rules of law stated in the opinion herein, to protect the holders of any warrants issued in payment of debts contracted or incurred after the beginning of the fiscal year in question and prior to the decision of this court for any purposes for which any such indebtedness was contracted, to make such adjustment, it being the intention of this court to require an application of the rules of law stated in the opinion in this case to the facts as disclosed by the record in this case on appeal and to such other facts as may be developed by evidence before the Court of Tax Review, and the Court of Tax Review for that purpose is authorized and directed to hear all of the evidence offered, upon remand of this case to that court, in order that the rules of law announced in the opinion in this case may be correctly applied to the existing facts.

The second petition for rehearing and the motions of the parties filed herein are overruled.

LESTER, C. J., and RILEY, HEFNER, CULLISON, SWINDALL, McNEILL, and KORNEGAY, JJ., concur. CLARK, V. C. J., absent.

Note: See under (9) 19 R. C. L. 1039; R. C. L. Pocket Part, title Municipal Corporations, § 328.