## GALLION v. EXCISE BOARD OF OKLAHOMA COUNTY.

No. 25873.   March 5, 1935.

Miley, Hoffman, Williams. France & John-

son and W. L. Farmer, for plaintiff in error.

Lewis R. Morris, Co. Atty., B. C. Logsdon, Asst. Co. Atty., Harlan Deupree, Municipal Counselor, and A. P. Van Meter, Asst. Municipal Counselor, for defendant in error.

WELCH, J. The controversy grows out of a difference of opinion as to the correct amount of surplus balance in the city general fund on June 30, 1933. The levy was based upon a surplus balance of $160,476.95. The protestant claims that the correct surplus balance was $327,098.34. The difference between the amounts claimed by the respective parties as the correct surplus balance is obviously $166,621.39. The figures or items employed by protestant in arriving at the sum named by her are as follows:

(1) 1930-31 and prior years, cash surplus _____$17,312.95
(2) 1931-32 cash surplus_____196,769.03
(3) 1932-33 cash collected into 10% added for delinquencies _____113,016.36

Total _____$327,098.34

There is no dispute between the parties as to whether or not all of the above items were actually collected during the fiscal year 1932-33, and all of the cash was on hand on June 30, 1933; it is conceded that the $17,312.95 item was cash collected from back taxes of 1930-31 and prior years during 1932-33, in excess of all obligations of each year calculated separately for which the tax was levied, and that the $196,769.03 item was cash collected from the 1931-32 tax levy during the year 1932-33 in excess of all obligations of the fiscal year 1931-32.

There is some dispute as to the amount of the $113,016.36 item, the city maintaining it is a smaller amount. We consider this dispute immaterial in this particular case, and for the purpose hereof we shall consider the item as stated by the protestant. It is not disputed that the item is arrived at by the following figures:

Total tax levy 1932-33_____$341,704.74
Amount added to appropriation 1932-33 for delinquencies_____ 251,872.87

Difference _____$ 89,831.87
1932-33 taxes collected to June 30, 1933 _____$202,848.23
Difference between last two items _____$113,016.36

The gist of the controversy rests in the deductions from such funds made by the city in arriving at its figures of the surplus balance. In this connection it is conceded that such deductions as were made by the city were none other than legal obligations of the fiscal year 1932-33.

Protestant's exact points of contention may best be shown by the following quotations from her brief:

"* * * He conceded in substance that the facts with reference to the three items which plaintiff in error contends make up this surplus of $327,098.34 are as alleged and contended for by plaintiff in error, but states that the estimated income of the fiscal year of 1932-33 had fallen down to such an extent that it was necessary to take that part of the total of these three items over and above the surplus used by the excise board, that is, the difference between the surplus that was used by the excise board and the amount of surplus claimed by plaintiff in error, to fill up the shrinkage that occurred in the estimated income from sources other than from ad valorem taxes for the fiscal year 1932-33. * * *

"It will be noted from the city's exhibit above referred to that the principal thing that reduces this surplus down to the amount of $160,476.95 used by the excise board in making this appropriation is that the sum of $353,395.85 was deducted from the surplus account on account of alleged failure of the city to collect miscellaneous revenue from sources other than ad valorem taxes for the fiscal year 1932-33."

Protestant maintains that if an item of miscellaneous collections from sources other than ad valorem taxes as used by the taxing officials in making appropriations is "over collected," that such overcollection cannot be used to pay that fiscal year's legal obligations. She further contends that any 1932-33 tax collections in excess of $89,831.-87 as explained by the above figures cannot be so used. The condition causing the controversy is caused by an undercollection of some of the items of estimated income and revenue used and considered by the taxing officials in making 1932-33 appropriations, and by the city's position that all of the funds above shown to have been collected should be used for the retirement of 1932-33 legal obligations.

Inasmuch as the controversy here involves the question of what constitutes a surplus balance which becomes a part of the 1933-34 general fund, it becomes necessary for us first to determine what income and revenue was provided for and became a part of the 1932-33 general fund, and the purpose for which it must be used.

In determining what income and revenue was provided for and became a part of the 1932-33 general fund we have only three items to consider:

First. The surplus balance actually on hand at the beginning of the fiscal year 1932-33. This consisted only of cash in excess of previous obligations for which it had been originally pledged.

Second. All cash actually collected during the fiscal year 1932-33 from any and all sources other than ad valorem taxation. This consisted of back taxes collected from all previous years in excess of the obligations of the fiscal year for which the same was levied, and all other miscellaneous collections for general fund purposes, and which were not restricted by law to a specific use. All of which is income from sources other than ad valorem taxation, and it is immaterial if any portion of such collections is in excess of any one or more items of anticipated income and revenue as considered by the taxing officials in making any prior appropriations, or is in excess of the whole of such anticipated income and revenue as so considered.

Third. The total amount of the 1932-33 tax levy, regardless of the fiscal year in which collected.

All cash collected during such period and from such sources immediately became a part of the general fund for the fiscal year 1932-33, and became immediately charged with the payment of any and all legal general fund obligations for such fiscal year. Such cash collections could never be employed for any other purpose until all of such legal obligations for such fiscal year are fully satisfied, either by payment or by a reserve of so much of said cash as will fully meet such legal obligations, for the reason that it is income and revenue provided for the fiscal year and for such purpose.

After such cash collections have been made, it becomes immaterial to our present discussion from which of the sources it came, and it is immaterial whether or not it is in excess of any single item of income and revenue as considered by the taxing officials in making any prior appropriations. The entire amount becomes one fund and is pledged to the payment of such fiscal year obligations and is never released for any other purpose until all such obligations are paid or provided for by reserving a sufficient amount of such cash for that purpose.

If such cash collections at the end of any fiscal year are in excess of all legal general fund obligations of the year in which they are collected (which would include any legal supplemental appropriations) it then becomes a surplus balance and immediately thereupon becomes by operation of law a part of the general fund of the following fiscal year, and is immediately pledged for the payment of general fund legal obligations for such succeeding fiscal year, and may be used or considered by the taxing officials as an item or basis af financing appropriations.

Protestant cites Atchison, T. & S. F. Ry. Co. v. Myers, 114 Okla. 240, 246 P. 395; C. D. Coggeshall & Co. v. Smiley, 142 Okla. 8, 285 P. 48; El Reno Wholesale Grocery Co. v. Taylor, 87 Okla. 140, 209 P. 749; In re Chicago, R. I. & P. R. Co.'s Protest, 142 Okla. 242, 286 P. 316; Protest of Bledsoe, 161 Okla. 227, 17 P. (2d) 979; Protest of St. Louis-San Francisco Railway Co., 166 Okla. 147, 26 P. (2d) 744; and Ryan v. Roach Drug Co., 113 Okla. 130, 239 P. 912, as authorities in support of her contentions. We do not so consider them. Most of the cited cases and many others of like import deal with the limitations of appropriations and levy. The fact, however, that the law limits appropriations to not to exceed certain income and revenue on hand or anticipated, does not necessarily mean that any income and revenue accruing in excess of such limit of anticipations does not become a part of the general fund when received, nor does it mean that an appropriation when made or a legal obligation when incurred may not be retired out of any funds accruing to the whole general fund. Appropriations are payable out of any income and revenue accruing to the general fund, and the limitations governing the making of the appropriations have no bearing on the payment thereof. We find nothing in the cited cases contrary to our views here.

With reference to the $113,016.36 item of 1932-33 tax collections it cannot be denied that the entire levy was made for the benefit of the general fund for that fiscal year. Having been so made, it cannot be diverted to any other use until all legal obligations of such fiscal year are fully satisfied. The fact that such item may have accrued by reason of the requirements of the law that the anticipated income and revenue must be calculated in excess of authorized ap-

propriations does not change the status of the item itself.

To say that a certain amount may be levied for the benefit of the general fund, but that it cannot be used for the purpose of retiring such general fund obligations, would appear to us to defeat the general purpose of the Legislature in requiring a margin of safety between appropriations and income and revenue anticipations. To accept protestant's theory here would result in diverting funds accruing to the 1932-33 general fund to uses of the following fiscal year, leaving legally issued warrants of 1932-33 outstanding and unpaid, contrary to the constitutional financial policy of "pay as you go."

The judgment of the Court of Tax Review is affirmed.

McNEILL, C. J., OSBORN, V. C. J., and RILEY, PHELPS, and CORN, JJ., concur. GIBSON, J., dissents. BAYLESS and BUSBY, JJ., absent.