## DELAWARE COUNTY EXCISE BOARD v. ST. LOUIS-S. F. R. CO.

No. 26254.  Sept. 25, 1935.

H. P. Walker, Co. Atty., Mac Q. Williamson, Atty. Gen., and Randell S. Cobb, Asst. Atty. Gen., for plaintiff in error.

J. W. Jamison and Cruce, Satterfield & Grigsby, for defendant in error.

WELCH, J. The exact question presented to the Court of Tax Review was whether the general fund of Delaware county had on hand on June 30, 1934, a cash surplus balance of $13,716.82.

It was admitted that on that date the county treasurer had that sum of money on hand to the credit of the county highway fund, in excess of the legal obligations against such fund. The county excise board did not consider that sum as being a surplus balance belonging to the general fund, and did not make use of said sum in financing the general fund budget for the fiscal year 1934-35. If that sum was a surplus balance of the general fund, then it should have been so used by the excise board in its calculations to finance said appropriations.

The Court of Tax Review held that said sum was a surplus balance belonging to the general fund of the county, and sustained the contentions of the protestant.

The county, on appeal, contends that said judgment must be reversed because said sum of money, on account of the origin thereof, was not and could not be considered as a surplus balance of cash belonging to the general fund of the county.

Heretofore this case has been treated as if a portion of said sum of money was derived from ad valorem taxation. The protestant in its brief states:

"* * * And so far as the record discloses, the only part of this surplus which came from the tax levy was $4,635.90. The remainder came from gasoline and auto license tax. * * *"

That statement is erroneous in part, and further examination of the record discloses beyond any question that no part of said sum of $13,716.82 was received from ad valorem taxation. but all of said sum was transmitted to the county treasurer from the state; that the origin of said sum was its collection by the state from gasoline tax and auto license tax.

As to that portion of said sum derived from gasoline tax, section 3, chapter 126, S. L. 1933, provides as follows:

"That one cent (1c) of the gasoline tax derived from each gallon of gasoline shall be apportioned by the State Highway Commission, to each county in the state, in the manner and for the uses and purposes provided in section 12535, Okla. Stats. 1931."

Section 12535, Okla. Stats. 1931, reads as follows:

"That one cent (1c) of the tax on each gallon of gasoline raised by this act, shall be apportioned monthly, by the State Highway Commission, or its successor in office, to each county in the state, in that percentage which the population, and area of each county bears to the population, and area of the entire state, that said fund after being apportioned shall be sent immediately to the county treasurer of each county to be deposited in the county highway fund, to be used by the county commissioners for the purpose of constructing and maintaining county or township highways and permanent bridges in such county. No part of this fund shall be used for any other purpose, except the construction and maintenance of county or township highways, and permanent bridges in said county; provided, that the fund herein created, when apportioned to the respective counties as herein provided shall not thereafter be diverted to any other county in the state, but shall only be expended in the county to which same was apportioned under the direction and control of the board of county commissioners. Where any state or county highway has been laid out over a road already constructed in any county by the use of money raised from county or township bond issues for the purpose either alone or by the use of federal or state aid, or both, the county commissioners may set aside out of the funds coming into that county from the gasoline tax above mentioned. an amount of money equal to the value or any part thereof of the interest of such county or township, or both, in and to such highway or highways, bridge or bridges, so constituting a part of the State Highway System, which amount of money shall be considered by the excise board under section 8576, Compiled Laws of Oklahoma 1921 (5921) in reducing the levy for the purpose of retiring the bonded indebtedness and interest thereon of the county or township, and shall be used for investment or deposit (sic) in the same manner as provided by law for the disposition of other sinking fund money. Any person violating the provisions of this act shall be deemed guilty of a misdemeanor and upon conviction thereof shall be punished by a fine not less than fifty dollars ($50), or more than five hundred dollars ($500) or by imprisonment in the county jail for not less than thirty (30) days, or more than ninety (90) days, or by both said fine and imprisonment. If any part of said fund is diverted for any other purpose, the county commissioners shall become liable on their bonds for double the amount of money so diverted."

As to the portion of the fund derived from automobile license tax, we find the following in chapter 113, S. L. 1933, section 10:

"Forty per cent. (40%) of all money received from vehicles and motor vehicles shall be deposited in the state treasury and credited to the State Highway Construction and Maintenance Fund to be expended by the State Highway Commission upon the state road system, the remaining sixty per cent. (60%) to be sent to the county treasurers; and provided further that fifteen per cent. (15%) of all moneys received from vehicles or motor vehicles, either in incorporated towns or cities shall be, by the county treasurer, paid over to the city treasurer to be credited to the street and alley fund. The remainder to be credited to the county highway construction and maintenance fund."

A reading of the above-quoted statutory provisions, which levy the tax and provide for its disposition. and use, could, in our opinion, leave no doubt that it was the clear intention of the Legislature to provide the funds for the specific purpose of constructing and maintaining county highways. That the Legislature had authority to levy the tax and to provide the purpose and use to which the funds should be put appears certain, and, as we understand, is not here questioned. This court has heretofore held in several opinions that funds derived from this source cannot be diverted to another use by the taxing authorities of the county. Atchison, T. & S. F. R. Co. v. Johnson, County Treas., 85 Okla. 161, 204 P. 910; Atchison, T. & S. F. R. Co. v. McCurdy, Co. Treas., 86 Okla. 148, 207 P. 321; Protest of Bledsoe, 161 Okla. 227, 17 P. (2d) 979.

The result of the conclusion and holding of the Court of Tax Review, authorizing and in fact requiring the county excise board to consider this said fund as a surplus balance in the general fund, usable in financing general fund appropriations, is to accomplish indirectly what may not be done directly, that is, the use of such moneys received by the county treasurer for county purposes other than highway purposes. This is expressly prohibited as to gasoline tax money by section 12535. supra. And as to auto license tax, we hold that the Legislature, in chapter 113. S. L. 1933, section 10, supra, expressed the intention that money derived from such taxes should be handled by the county in the same manner and for the same purposes, in so far as concerns the question presented in this action.

If any of these funds remained in the hands of the county treasurer at the end of the fiscal year, and if such sum is taken and considered as a surp'us balance belonging to the general fund, and is so used by the excise board in financing the general fund appropriations, then the result is to use this fund for general county purposes, in violation of the legislative provision creating the fund for a specific purpose and requiring its use for such purpose only.

On account of the origin of the sum of money involved in this action, and by reason of the provisions of law applicable thereto, said sum never became a part of the general fund of the county, usable for general county purposes. See the recent case of Gallion v. Excise Board of Oklahoma County, 171 Okla. 76, 42 P. (2d) 508, where we had under consideration the question of what moneys received by the county treasurer became a portion of the general fund of the county. Therein we recognized the right of the Legislature to direct what portion of public moneys shall be devoted to general fund purposes, and what portion of same may be restricted to a specific use.

Protestant urges that it is the policy of the law, as reflected by the prior decisions of this court, to require surplus funds to be used for purposes of appropriations and purposes of reducing tax levies, and directs our attention to In re Bliss, 142 Okla. 1, 285 P. 73; In re Tax Levy City of Woodward, 143 Okla. 204, 288 P. 458; Protest of Reid et al., 160 Okla. 3 15 P. (2d) 995. The cited cases merely reiterate the long-established principle of law that any surplus balance of cash, which in fact belongs to the general fund and has become a part thereof, must be considered by the taxing officials in' determining the rate of tax levies.

The funds there involved were not restricted by law to a use other than the general fund. Those cases are not authority, however, for the position that surplus cash on hand, which is restricted to a special use by specific legislative enactments, and which. by law never becomes a portion of the general fund, may or should be employed or considered as a part of the general fund for general county purposes.

The protestant next contends that the amendment to section 9, article 10, of the Constitution, chapter 169, S. L. 1933, adopted August 15, 1933, abolishes all distinctions in funds belonging to the county, except as between general fund and sinking fund. It calls attention to our recent opinion in Atchison, T. & S. F. R. Co. v. Excise Board of Washington County, 168 Okla. 619, 35 P. (2d) 274, as authority for its contention in this regard. The effect of that opinion on the point under discussion is that the excise boards in apportioning the rates of levy are not bound by the limits imposed by chapter 122, S. L. 1933. To the same effect is C., R.

I. & P. R. Co., v. Excise Board of Stephens County, 168 Okla. 519, 34 P. (2d) 274.

The cases referred to are not authority for the position that funds which have never become a part of a county general fund must be used for general fund purposes. If any portion of the funds here under consideration had been derived from a general fund ad valorem tax levy theretofore made by the county, the question might then become pertinent whether or not such portion of same derived from that source should be considered by the taxing authorities in making a subsequent general fund levy. It is obvious that such question is not presented by the facts here, and needs no determination here.

The protestant's contention that the 1933 constitutional amendment operates to prevent the Legislature from heretofore or hereafter levying a tax, and providing for the disposition of the funds derived therefrom, is in our opinion not well taken. The amendment, in so far as we observe from this discussion, involves only the limits of a tax levy on an ad valorem basis. We are unable to gather therefrom that it in any manner relates to a disposition or use of public funds such as are herein involved.

For the reasons stated, the judgment of the Court of Tax Review is reversed, with instructions to deny the protest.

OSBORN, V. C. J., and BAYLESS, BUSBY, PHELPS, and CORN, JJ., concur. McNEILL, C. J., and RILEY and GIBSON, JJ., dissent.