## LOWDEN et al. v. EXCISE BOARD OF POTTAWATOMIE COUNTY.

No. 26933. April 28, 1936.

W. R. Bleakmore, W. L. Farmer, John

Barry, and Robert E. Lee, for plaintiffs in error.

Thos. C. Wyatt, Co. Atty., for defendant in error.

GIBSON, J. The excise board of Pottawatomie county made an appropriation for the county highway fund for the fiscal year 1935-1936 and included therein the sum of $42,200.17, representing a balance in the hands of the county treasurer at June 30, 1935, to the credit of the emergency investment fund. This balance accrued between July 1, 1933, and May 13, 1935, from apportionments of revenues, from motor vehicle license fees and the excise tax on gasoline, made to the county and placed in the emergency investment fund under authority of chapter 137, S. L. 1933. Plaintiffs in error, protestants below, protested the action of the defendant in error, protestee below, in including within the highway fund appropriation the above-mentioned balance, and contended that the balance should be transferred to and used in the sinking fund, thereby reducing the levy for the same.

From a judgment in favor of the excise board the taxpayers has appealed. The parties will be referred to as they appeared in the trial court.

The county emergency investment fund was created by chapter 137, S. L. 1933. Section 1 of the act reads as follows:

"Section 1. That one-half of all moneys apportioned to each county of the state on and after the first day of July, 1933, from motor vehicle license fees and the excise tax on gasoline, under existing laws, which has heretofore been apportioned to the several counties for the construction, maintenance and repair of county roads and highways shall be placed to the credit of a fund to be known and designated as the 'County Emergency Investment Fund,' and shall be invested under the direction of the county treasurer as hereinafter provided.'

Section 2 of the act directs how the funds shall be invested, and reads as follows:

"Section 2. That the county treasurer of each of the several counties of this state, in order that the required governmental functions may be carried on, is hereby authorized, empowered and directed to use all moneys collected and deposited in the said 'County Emergency Investment Fund,' in the order hereinafter designated, or in the order that may be prescribed by the county excise board as hereinafter provided, and no part of the fund shall be used for the second or any succeeding designated purposes until the next preceding requirement shall have been satisfied, as follows:

"First: For investment in outstanding

legally issued nonpayable county warrants, at not to exceed par, and accrued interest, if any, which have theretofore been issued against appropriations for the current fiscal year, and that the same shall be deemed to be satisfied at the end of each month upon purchase of all such warrants as are presented for investment.

"Second: For investment in outstanding legally issued nonpayable county warrants, at not to exceed par and accrued interest, which have theretofore been issued against appropriations for any previous fiscal year, whether or not such warrants have been reduced to a judgment against the county; provided, that when any moneys in said fund have been used, to pay judgments rendered against any county on account of unpaid warrants, as herein provided, it shall be the duty of the proper officers of any such county to make the levies necessary to pay such judgments the same as if they had not been paid out of such fund; and when so levied and collected such moneys shall be used to reimburse the said fund as provided in section 3 of this act. Provided that warrants issued after March 1, 1933, shall be given priority under this subsection. As to all other unpaid and outstanding warrants, they shall be taken up by investment, as herein provided, in the order of their registration as provided in section 5951, Oklahoma Statutes 1931, upon notice by the treasurer of ten (10) days, in the manner provided by said section; and, if the holder of any warrant, or warrants, fails to present the same within the time specified, the available funds shall be used for investment in other outstanding warrants in the next order of their registration as provided in said section. And provided further, after the investment in warrants as above provided, additional funds may be invested in judgments based upon warrants as provided in this act.

"Third: For payment, into the sinking fund, so far as necessary, for the purpose of paying the accrued and accruing interest and principal of outstanding bonds issued for the construction of roads and highways; and any amount so used shall reduce, by a corresponding amount, the annual ad valorem levy made for the purpose of retiring such county highway bond indebtedness and interest thereon.

"Fourth: For payment, monthly, into the county highway construction and maintenance fund, to be expended therefrom as provided by law, in all cases where all such outstanding warrant, judgment or bond indebtedness has been paid, or where there is no such outstanding indebtedness, in which event, the provisions of this act shall not apply.

"Provided, further that the county excise board may, by proper order, direct the coun-ty treasurer to change the order of the three (3) first purposes above designated.

"No part of said fund shall be invested in the warrants of any other county than the county to which the moneys were first apportioned."

The automobile license tax is levied and collected by the state under authority of section 10271, O. S. 1931, as amended by section 3, chapter 113, S. L. 1933. A portion of the tax so collected was apportioned to the counties of the state by section 10288, O. S. 1931, as amended by section 10, chapter 113, S. L. 1933.

Section 12551, O. S. 1931, as amended by section 3, chapter 111, S. L. 1933, imposed an excise tax on gasoline, and section 12527, O. S. 1931, amended by chapter 126, S. L. 1933, and by section 1, article 10, chapter 66, S. L. 1935, established the rate of tax. A part of the gasoline tax so collected was apportioned to each county of the state by section 12535, O. S. 1931, and its use in the construction of county and township roads and permanent bridges was expressly provided for in said act.

The Emergency Investment Fund Act did not contain any specific reference to the aforesaid acts; but by its terms it provides for a different apportionment of the automobile license tax and the gasoline excise tax from that provided for in the cited sections.

The County Emergency Investment Fund Act remained in force and effect until April 15, 1935, when the same was amended by article 3, chapter 35, S. L. 1935. The amendments therein contained are not material to the question under consideration.

On May 14, 1935, chapter 137, S. L. 1933, as amended by article 3, chapter 35, S. L. 1935, was repealed by section 1, article 3, chapter 50, S. L. 1935, which reads in part as follows:

"(e) All moneys raised for the use on the county highways in each county, or apportioned to each county for road purposes, from any source, including all funds and moneys heretofore used by the board of county commissioners derived by law, levy, taxation, or apportionment and which have heretofore been known as the county road maintenance fund, and all of the funds and revenues which have been made up of ad valorem taxes, automobile license taxes, one-fourth of one mill levy, and gross production tax going to the various counties for county road purposes, shall be placed in the county treasury in a fund to be known as the county highway fund, to be expended on order of the county commissioners with-

out the supervision of the State Highway Commission, on county highways, as defined herein, or on state highways, within their respective counties, if in the judgment of the county commissioners such expenditure would be just and equitable and for the best interest of the county. All moneys collected, apportioned or received from any source by any county for road purposes under existing statute law of this state, are hereby diverted into the county highway fund. Chapter 137, Oklahoma Session Laws 1933, and Senate Bill 97, Fifteenth Legislature, amending same, are hereby repealed."

In Delaware County Excise Board v. St. L.-S. F. Ry. Co., 173 Okla. 574, 49 P. (2d) 523, we considered the question of the disposition by Delaware county of the money derived from the gasoline and motor vehicle taxes, and apportioned to it by the state, and there we said, in the third paragraph of the syllabus:

"The various counties of the state, in expending moneys derived from the state gasoline tax and auto license tax, are restricted by the applicable legislative enactments, and may only expend such moneys for the purposes authorized by the legislative enactments."

In the cited case and in Gallion v. Excise Board of Oklahoma County, 171 Okla. 76, 42 P. (2d) 508, we recognized the right of the Legislature to direct the use of public moneys apportioned by it to the various counties of the state.

In the Emergency Investment Fund Act the Legislature has dictated the uses to which the money in that fund shall be put, and has described, in order, the purposes for which the money shall be used. Such is a valid exercise of legislative authority and it is binding on the county authorities in their use of the moneys apportioned to the fund in question.

The facts admitted here show that up to and including May 13, 1935, the day before article 3, chapter 50, S. L. 1935, repealing the Emergency Investment Fund Act went into effect, there had accumulated in said fund the balance which is the subject of this controversy. So far as the record before us discloses, there were no outstanding nonpayable current warrants or outstanding judgments on warrants on May 13, 1935, or at the close of the fiscal year then current. Hence no part of the county emergency investment fund was needed for the purposes enumerated in subsections 1 and 2 of section 2 of the Emergency Investment Fund Act. It is admitted, however, that on those dates there were outstanding unpaid road

bonds of Pottawatomie county. It is to the payment of the annual accruals of interest and principal of these bonds that the protestant contends the balance of the emergency investment fund should be applied under subsection 3 of section 2, supra. We think that contention is untenable. Subsection 3 of section 2 of the Emergency Investment Fund Act provides that whenever any payments are made from the emergency fund into the sinking fund, "any amount so used shall reduce, by a corresponding amount, the annual ad valorem levy made for the purpose of retiring such county highway bond indebtedness and interest thereon." This, in our opinion, contemplates the use of the emergency funds for sinking fund needs at the time the estimate of needs of the sinking fund is prepared and the appropriation for the needs of said fund is made by the excise board of the county. Had the funds in controversy remained in the emergency fund until the close of the fiscal year 1935 and had not the repealing act (article 3, chapter 50, S. L. 1935) been passed prior to the end of that fiscal year, protestant's contention would be correct, but the repealing act by its terms diverted into the county highway fund the funds in question from the purposes for which it could have been used had the emergency act remained in force until the end of the fiscal year. Within the contemplation of the applicable statutes, there was no balance in the county emergency investment fund at the end of the fiscal year in question, for when the Emergency Fund Act was repealed, any balance therein was transferred by operation of law to the county highway fund.

Protestant contends that such diversion violates section 19, article 10, of the Constitution, which provides in part:

"* * * And no tax levied and collected for one purpose shall ever be devoted to another purpose."

We do not agree. The funds in question were not levied and collected under the Emergency Act; they were merely apportioned thereunder to the counties. The purposes for which the taxes, from which the funds in question arose, were levied, remained the same after the repeal of the Emergency Act as they were before the passage of that act.

Judgment affirmed.

OSBORN, V. C. J., and RILEY, BAYLESS, BUSBY, WELCH, and CORN, JJ., concur. McNEILL, C. J., and PHELPS, J., absent.