OKMULGEE COUNTY, EXCISE
BOARD, v. CONSOLIDATED
PIPE LINE CO. et al.

No. 30238.   May 27, 1941.

*113 P. 2d 989.*

Jack Pitchford, County Atty., and L. A. Wallace, Asst. County Atty. (E. F. Maley, of counsel), all of Okmulgee, for plaintiff in error.

Mastin Geschwind, of Oklahoma City, for defendants in error.

WELCH, C. J. On June 29, 1940, the board of county commissioners, by formal resolution, sought to transfer from the resale property fund to the sinking fund something over $29,000 which remained after full provision had been made for all outstanding general fund warrants and all general fund obligations for the fiscal year 1939-1940. The transaction, however, did not result in placing the funds beyond the actual pos-session and control of the county treasurer.

The present tax protest is based upon the failure of the taxing officials to treat this fund as a surplus cash balance in the general fund in calculating the rate of general fund ad valorem tax levy for the fiscal year 1940-1941.

Section 13, art. 31, ch. 66, S. L. 1939, 68 Okla. St. Ann. § 432L, relating to use to be made of funds such as herein involved, after providing for certain uses, all of which prior purposes were admittedly fully satisfied here, provides in part as follows:

"On the 15th day of May and June of each year, any balance on hand in the 'Resale-Property Fund' of each county, after reserving therefrom sufficient sums, (1) to cover the cost of preparing and making delinquent tax publications, made or about to be made, as hereinbefore set out, and (2) to pay pending claims and encumbrances on file for the upkeep, repair and maintenance of unsold properties acquired by the county at resale, shall be apportioned by the County Treasurer in the following manner:

"One-third of such surplus residue to such county to be applied first to the payment of delinquent warrants. of such county, thereafter to its current general fund; * * *"

No question is made as to the legislative authority to control the use and disposition of the funds. Appellant suggests in the briefs that the 1939 legislative act, supra, does not prohibit the use of the funds for sinking fund purposes when the best interests of the county and all of the taxpayers require.

We do not agree with the theory of appellant in that regard. The statute considered creates a special fund of the monies so acquired and prescribes the purposes to which it shall be applied. Its use for sinking fund purposes is thereby excluded, however advantageous such use might appear to the controlling officials.

Appellants argue that no taxpayer could have suffered detriment by the

action taken by the taxing officials and point out that the use of the funds as a part of the sinking fund resulted in a corresponding decrease in the current sinking fund levy. In the matter of the control, use, and disposition of public funds, consideration of expediency, or the honest and even well-founded judgment of public officials as to immediate "best interests" of the county and its taxpayers, should not lead the officials nor the courts to ignore or evade the plain provisions of the statutes. A real or imaginary equitable consideration can rarely find a proper place in consideration of questions relating to the control and use of public funds, which of necessity is a matter to be controlled by the lawmaking branch of our government.

Although basing our conclusion purely upon our construction of the statute, we will say that appellant's assertion that the use of these funds as a sinking fund asset will not place a heavier burden on some taxpayers is not wholly correct. We have in effect laws which allow some tax exemption applicable to homesteads. This exemption, however, does not relieve from previously fixed sinking fund obligations. Obviously the amount of tax to be paid by different classes of taxpayers will be affected by the application of these funds either to the general or sinking fund.

We do not intend to be critical of the motives of the county commissioners in attempting to transfer the fund as here shown. Obviously they might have increased their general fund appropriations by leaving the money in the general fund. Instead it would appear that they voluntarily sought to retrench their general fund appropriation and reduce the sinking fund levy in a corresponding amount. They might have accomplished the same purpose, however, by reducing their requests for appropriations with the result that all taxpayers would share equally in the benefit of the cash surplus, and, of controlling consequence here, would have then acted in compliance with statute.

When the Legislature has specifically directed the use to which certain public funds must be applied, the funds can generally be used for no other purpose. Atchison, T. & S. F. Ry. Co. v. Johnson, County Treas., 85 Okla. 161, 204 P. 910; Atchison, T. & S. F. Ry. Co. v. McCurdy, County Treas., 86 Okla. 148, 207 P. 321; Protest of Bledsoe, 161 Okla. 227, 17 P. 2d 979. Exceptions are those cases where the specified purpose has been fully served, which condition is not present here.

The taxing officials cite Excise Board of Woodward County v. Reid, 143 Okla. 204, 288 P. 458, and City of Yale v. Excise Board of Payne County, 156 Okla. 192, 10 P. 2d 403, as fully authorizing the action taken by them. The controlling distinction is plain. In those and other cases it is pointed out that neither the Constitution nor statutes specifically prescribe the purpose to which the funds therein involved must be used.

Appellants further assert that the Court of Tax Review has no jurisdiction to determine the validity of transfers of funds made by the governing board during the preceding fiscal year. When the inquiry concerns the proper amount of a tax levy, a purported transfer of funds without authority of law may in a proper case be treated as void by the authorities officially concerned with determining the proper rate of levy. No regard should be given the abortive effort to transfer, and the funds should be treated as remaining where they lawfully belong unless they have passed beyond the control of the officials entrusted with their care and legal application. Protest of Bledsoe, supra; Protest of Downing, 164 Okla. 181, 23 P. 2d 173, and others. The record here affirmatively shows that the funds attempted to be transferred are yet in the full possession and control of the officials charged with the legal

duty of applying same to the use of the county general fund, and thus may actually be used in the general fund where such monies by law belong.

The judgment is affirmed.

CORN, V.C.J., and RILEY, OSBORN, and DAVISON, JJ., concur.