## MORLEY et al. v. STATE ex rel. BOARD OF ED., CITY OF TULSA.

No. 25908.   Dec. 11, 1934.

Withdrawn, Corrected, and Refiled
March 5, 1935.

Rehearing Denied March 26, 1935.

J. Berry King, Atty Gen., and Randall S. Cobb, Asst. Atty. Gen., for plaintiffs in error.

C. H. Rosenstein and Silverman, Rosenstein & Fist, for defendant in error.

BUSBY, J.   This action in mandamus was commenced in the district court of Tulsa county on the 14th day of September, 1934, by the defendant in error, the state of Oklahoma, on the relation of the board of education of the city of Tulsa, as plaintiff. The plaintiffs in error, Ralsa F. Morley, Merritt J. Glass, and G. Ed Warren, as the excise board of Tulsa county, Dan Rowe, as county assessor of Tulsa county, Okla., A. L. Carmichael, as county treasurer of Tulsa county, L. D. Souter, as assessor of Osage county, Fred Newberry, as county clerk of Osage county, and L. L. Houston, as county treasurer of Osage county, were the defendants in the trial court.

The question involved in this action relates to the method of computing tax levies and determining the amount of appropriations which may be made for current expense purposes of the independent school district comprising the city of Tulsa, which lies partly in Osage county.

Briefly stated, this case presents a dispute between the board of education of the city of Tulsa and the excise board of Tulsa county. The principal point of difference between these two boards concerns the effect of a surplus balance represented by unincumbered cash on hand and ad valorem

taxes in the process of collection existing at the close of one fiscal year on the ad valorem tax levies for the next succeeding fiscal year.

It appears from the record that at the close of the fiscal year of 1933-1934, the Tulsa school district had unincumbered cash on hand in the sum of $46,868.11 and a surplus balance of ad valorem taxes in the process of collection in the sum of $40,417.29 (subject to a deduction of $20,000 in accord with the views subsequently expressed in this opinion). It is urged by the excise board that by virtue of the provisions of chapter 85 of the Oklahoma Session Laws of 1933, these items must be deducted from the amount that could, in their absence, be raised by ad valorem taxation, and that the ad valorem tax levy for current expense purposes must be reduced accordingly; that such reduction of tax levy must be made, regardless of the fact that estimated needs of the school district, as determined by the board of education, cannot be satisfied when such reduction of levy is made. The board of education, on the other hand, urges that the two items mentioned are available for appropriation in addition to the maximum amount that may be raised by ad valorem taxation, when the estimated needs of the school district require such use, conceding, of course, that they would operate to reduce the levy in a case where the needs of the school district could be satisfied without making the maximum levy

The contention of the board of education was approved by the trial court and judgment rendered accordingly. The members of the excise board and their codefendants bring the case to this court for review.

The facts with which we are concerned are as follows:

On or about July 25, 1934, the board of education of the city of Tulsa filed with the excise board of Tulsa county its financial statement for the fiscal year of 1933-1934, together with its estimate of needs for the fiscal year of 1934-1935. The estimated needs of said school district for current expense purposes, as determined by the board of education, were $1,843,304.98.

As hereinafter pointed out, the estimated needs of the school district, as above set forth, exceed the amount that can be appropriated under either proposed theory of the proper disposition of the surplus balance represented by unincumbered cash on hand and ad valorem taxes in the process of col-

lection. This for the reason that the maximum income from ad valorem taxes for the current fiscal year (proper allowance for delinquent taxes being made), when added to the surplus balance and anticipated revenue from other sources, does not equal the estimated needs for current expenses.

The duty falls on the excise board, in determining the amount of appropriations, to make deductions from the estimated needs. The question was not whether a reduction should be made, but how much should the reduction be. We must bear in mind in this connection that an excise board is without power to appropriate less than the amount of the estimated needs of an independent school district if the amount estimated to be needed can be appropriated within constitutional and statutory limitations, and similarly when the estimated needs of the independent school district exceed the amount that can be raised within constitutional and statutory limitations, the excise board cannot make greater reductions than are necessary to bring the appropriations within the limitations imposed by law. State ex rel. Board of Ed. v. Excise Board of Payne Co., 155 Okla. 227, 7 P. (2d) 473; Board of Education v. Excise Board of Logan County, 155 Okla. 214, 8 P. (2d) 683. See, also, section 12657, O. S. 1931; Stockton v. Excise Board of Payne County, 155 Okla. 120, 8 P. (2d) 57.

We must consider the amount of available income of the Tulsa school district in order to determine the extent to which appropriations can lawfully be made.

The amount of estimated income of the Tulsa school district for the fiscal year 1934-1935 from sources other than ad valorem taxes (sales and income tax excluded) appears from the record to be $177,297.91, not including the net unincumbered ad valorem taxes in process of collection.

By virtue of section 9 of art. 10 of the Oklahoma state Constitution, as amended in August of 1932, the excise board was authorized to apportion 15 mills between city, county, and school district. Exercising the power thus conferred, the excise board of Tulsa county authorized a levy of 4 mills on the property within the school district. The voters at an election held within the district authorized an additional 10-mill levy, making in all a total levy for current expenses of 14 mills, which, when applied to the taxable property within the school district (assessed at $116,916,286), would produce the

sum of $1,636,828. This sum, when added to the $177,297.91, estimated income from sources other than ad valorem taxes, makes a total of $1,814,125.91, from which must be deducted a proper allowance for delinquent taxes, fixed by the excise board at 10 per cent. and determined by the excise board to amount to $164,920.53; leaving a balance of $1,649,205.38, which, according to the theory of the excise board, represents the maximum amount available for appropriation.

According to the contention of the excise board, the surplus balance represented by unincumbered cash on hand ($46,868.11) and the net unincumbered ad valorem taxes in the process of collection ($40,417.29, less $20,000) should be deducted from the amount to be raised by ad valorem taxes and the levy reduced accordingly.

The board of education contends, however, that these items are available for appropriation in addition to the amount which may be raised by ad valorem taxes, and that the amount available for appropriation should be increased thereby.

Prior to the enactment of chapter 85, S. L. 1933, there was no basis whatever for the contention of the excise board. Is the contention tenable under the provisions of that act? We held that it was not in the recent case of Protest of St. Louis-San Francisco Railway Co., 169 Okla. 648, 38 P. (2d) 513.

In that case the maximum levy authorized for cities by the excise board was 3.5 mills. The question was whether the full levy could be made by the city of Clinton, which had a cash surplus on hand. We held that it could. In disposing of the question, speaking through Mr. Justice Osborn, we said:

"Protestants contend that the above procedure is improper and illegal by reason of the provisions of chapter 85, S. L. 1933, amending section 12678, O. S. 1931, in that it was the purpose, meaning and intent of said act that a cash surplus on hand at the close of the fiscal year could only be used to reduce the levy for the next succeeding fiscal year. Protestants' theory is that since the amount of the cash surplus on hand is an amount equal to a levy on the assessed valuation of the municipality of 2.073 mills, the levy should be reduced to 1.427 mills, which is the maximum that could be levied under such circumstances. * * *

"In support of their theory of the law, protestants call attention to that portion of chapter 85, S. L. 1933, providing that if and when a surplus of cash shall accrue in any fund or account, the same shall forthwith be transferred to the same fund for the next succeeding year. This particular provision was declared unconstitutional and void in the case of State v. Morley, 168 Okla. 259, 34 P. (2d) 258. Our attention is also directed to a provision in the title of the act in question 'requiring any surplus to be used in reducing appropriations and levies for succeeding years.' It is argued that where any doubt arises as to the meaning of a statute, the language of the title to the act must be considered in determining such meaning. In the instant case, however, we find no difficulty in ascertaining the meaning of the statute without reverting to the language of the title of the act.

"Chapter 85, S. L. 1933, supra, outlines very clearly the necessary steps and the order in which they shall be taken, to make a levy. It is noted that the act deals with two different surplus balances, the first being a cash surplus balance such as we are dealing with here, and the other a surplus balance represented by ad valorem taxes in the process of collection. It provides that the excise board must first compute and determine the total appropriation and the next step is to deduct therefrom the cash surplus balance. Thereafter there must be added the amount fixed for a reserve, and thereafter there must be deducted the amount of any surplus balance represented by ad valorem taxes in the process of collection, together with the amount of probable income from all sources other than ad valorem taxation, and for the balance so remaining the excise board must make a levy According to protestants' theory it would be necessary for the excise board to disregard the second prerequisite step in determining the amount of the levy, which is the deduction of the cash surplus balance on hand and proceed to add to the total appropriation the amount fixed as reserve, thereupon deduct the surplus balance arising from taxes in the process of collection and the amount of estimated income from sources other than ad valorem taxation, and determine the levy necessary to raise said amount and then deduct the cash surplus balance on hand. Such a construction would be contrary to the plain purpose, meaning and intent of the legislative act. The contention of the protestants is without merit."

The above decision definitely disposes of the contentions of the excise board. We follow the rule therein announced. It follows, therefore, that the surplus balance of cash, as well as the net unincumbered taxes in the process of collection, should have been considered in determining the amount available for appropriation. The lower court so held, and its decision will be affirmed.

In order to avoid confusion, we have heretofore avoided mentioning a number of mat-

ters incidental and related to the calculation of the sums previously mentioned in this opinion. In order that the scope of this opinion may be properly understood, it is advisable that they be referred to at this point.

At the close of the fiscal year of 1933-1934, there existed an unincumbered cash balance of $5,278.92, representing an unexpended balance of sales tax in the "common school relief fund" of the Tulsa school district. This amount is not included in the $46,868.11 cash surplus previously mentioned in this opinion. It was agreed by the parties, and held by the trial court, that the said $5,278.92 was not available for appropriation, and must be used to reduce the ad valorem tax levy. No question is presented in connection with the decision of the trial court on this item.

The probable income from sales tax was determined to be $76,950.61 and the amount of income tax received is $40,410.14. Neither of these items was included in the $177,297.91 estimated income of the district, mentioned in the previous portions of this opinion. The trial court held the two items (probable income from sales tax and receipts from income tax) should be used to reduce the ad valorem tax levy. The correctness of this decision is not questioned in this case.

It is next contended by the excise board that the portion of the $46,868.11 cash on hand, to wit, $38,071.35, which was derived from collections into the 10 per cent. added for delinquent taxes for the fiscal year 1930-1931, is not available for appropriation, but should be used to reduce the ad valorem tax levy. No existing statute contains any requirement that the money shall be so used. On the contrary, chapter 85, S. L. 1933, provides that the **cash surplus from the previous year or years** shall be deducted from the **amount of the appropriations,** not the amount to be raised by levy. Clearly unincumbered cash derived from collections into the 10 per cent. provided for delinquencies for a previous fiscal year constitutes a cash surplus from previous year or years. In the case of In re Monsell, 142 Okla. 130, 285 P. 836, this court said, speaking through Mr. Justice Andrews:

"'* * * If any portion of the 10 per cent. of the tax is collected, there will be a surplus from the levy. That surplus may appear at the end of the current year, and will so appear if the tax is all collected by that time, but, under our system for collecting taxes, it is probable that it will not appear until some succeeding year. Whenever it does appear, it must be accounted for as provided by section 9699, Id." (Referring to section 9699, C. O. S. 1921.)

Section 9699, C. O. S. 1921, referred to in the Monsell Case, supra, became section 12678, O. S. 1931, and was amended by chapter 85, supra.

Thus the surplus balance derived from the collections made from the 10 per cent. added for delinquencies must now be accounted for as provided by chapter 85, supra. It becomes a part of the cash surplus balance referred to therein, and is available for appropriations. The decision of the trial court in so holding is affirmed.

The next question presented in this case is whether the unexpended portion of an appropriation for interest on warrants lapses at the end of a fiscal year when there are outstanding warrants for the fiscal year for which interest will accrue during the next fiscal year.

It appears from the record that the excise board made an appropriation for the school district for the fiscal year of 1933-1934 in the sum of $40,000 for interest on warrants. The board of education, in preparing its financial statement which accompanied its estimate of needs for the fiscal year of 1934-1935, set forth that, of the $40,000 so appropriated, $16,610.02 had been expended prior to June 30, 1934, in the payment of interest on warrants for the fiscal year of 1933-1934, and that in addition thereto the accrued interest on outstanding warrants up to June 30, 1934, amounted to $3,-389.98, making a total of $20,000 which had been expended or was incumbered by accrued interest on outstanding warrants. The remaining $20,000 was treated as a surplus balance represented by taxes in the process of collection, and became a part of the $40,-417.29 item mentioned in the previous portions of this opinion.

There was approximately $400,000 in outstanding warrants for the year 1933-1934, which would continue to bear interest at the rate of 6 per cent. until paid.

It was contended by the excise board that the $20,000 which, on June 30, 1934, had not been expended or incumbered by accrued interest, was incumbered by interest on outstanding warrants which would certainly accrue in the future, and that the appropriation for the payment of the same did not lapse.

The school board, on the other hand, con-

tends that neither itself nor the excise board was authorized to guess how long the outstanding warrants would remain unpaid or how much interest would accumulate thereon. It is pointed out that if the warrants plus interest are not paid from taxes collected for the fiscal year, the unpaid warrants may be liquidated through judgments or funding bonds.

The trial court sustained the petition taken by the school board. The question presented is extremely close and much can be said on both sides. After careful consideration of the problem, we have concluded that the position taken by the excise board is more consistent with the general theory of our tax law and presents the safer rule to follow.

It is true the law authorizes the liquidation of unpaid warrants through judgments. Such a provision is necessary in order to preserve the credit standing of municipalities and provide against unforeseen contingencies. Such procedure is not favored, however, since the rate of taxation is thereby increased. Taxing officials should not so manage the affairs of municipalities that a future deficit becomes a moral certainty. As a matter of judgment and sound municipal financial policy, it is far better that some one hazard a guess as to how much future interest will accrue on outstanding warrants (it being certain that a substantial sum will accrue), than that the school district otherwise dispose of the revenue designed to meet its established obligations.

Our decision on this question is in accord with the principles previously announced by this court in the case of C. D. Coggeshall & Co. v. Smiley, 142 Okla. 8, 285 P. 48, in which we said in syllabus 15:

"The excise board is authorized to deduct from the balance on hand at the end of the fiscal year an amount sufficient to liquidate all valid unsettled contracts made during that fiscal year."

And in the case of Protest of Chicago. R. I. & P. Ry. Co.. 164 Okla. 72, 22 P. (2d) 1002, we said:

"The other issue involved herein is the tax levy for school district No. 64 of Grant county. The Court of Tax Review increased the amount of the balance on hand in the fund as shown in the financial statement, by striking from the statement an item of $612.51 shown thereon to be reserved for the purpose of paying interest on the outstanding warrants for the fiscal year for which that statement was made. We find and hold that there was error therein.

Under the rule stated in C. D. Coggeshall & Co. v. Smiley, Co. Treas., 142 Okla. 8, 285 P. 48, there should have been deducted from the balance on hand at the end of the fiscal year an amount sufficient to liquidate all valid unsettled contracts made during that fiscal year. The financial statement showed the amount of the outstanding warrants for that fiscal year. Under the provisions of the statute, those warrants draw interest at the rate of 6 per cent. and the amount of that interest constitutes a part of the valid unsettled contracts made during that fiscal year. In order that there may be no question in the future, we repeat that, in determining the amount of valid unsettled contracts made during a fiscal year at the end of the fiscal year, the amount of interest on outstanding warrants for that fiscal year may be added to the principal amount of those warrants. The judgment of the Court of Tax Review on this issue is reversed."

While in the last-mentioned decision it is not clear whether the item reserved for the payment of interest on outstanding warrants contemplates the payment of interest already accrued or which would accrue in the future, the uncertainty is not of controlling importance, since the future interest is as much a part of the obligation created by the warrant as is the accrued interest, and its payment is just as essential in liquidating the debt.

Since the school board made no allowance for the payment of accruing interest, it was proper for the excise board to do so. The amount of $20.000 was not unreasonable in view of the amount of outstanding warrants, to wit, $400,000. The judgment of the trial court on this item is reversed.

In order to avoid confusion, it may be stated at this point that only so much of an unexpended appropriation for interest need be preserved as will be reasonably necessary to pay the accruing interest on outstanding warrants.

This brings us to the fourth and last question presented in this case, namely, When a board of education fails to include any sum in its estimate of needs for interest on warrants, may an excise board properly include a reasonable appropriation for that purpose?

It appears that the board of education failed to include in its estimate of needs any sum whatever to take care of interest on warrants issued during the fiscal year of 1934-1935. The excise board nevertheless made an appropriation for $25,000 for that purpose.

It is suggested in the brief of the board of education that the accruing interest might be paid out of the particular item of appropriation against which a warrant is issued, and that no separate appropriation is necessary for that purpose. As we view the record in this case, the legal soundness of the suggestion is not presented thereby, for the reason that it does not appear from the record that the several items of appropriation contain any sum for interest on warrants. On the contrary, the petition of board of education, as filed in the trial court, and the alternative writ issued thereon, both negative the idea and dispute the suggestion made. Both assert that "no sum was estimated for the purpose by the plaintiff" (board of education).

The obligation to pay interest on nonpayable warrants is imposed by law (sections 5432 and 5951, O. S. 1931). It is not a matter in which the board of education is authorized to exercise discretion, except the discretion in the first instance of determining the probable amount necessary for that purpose. The past experience of the school district involved demonstrates the certainty of the need for such an appropriation. For the fiscal year of 1931-1932 the board of education paid $76,429 interest on warrants, $42,761.41 for 1932-1933, $20,000 for 1933-1934, with $400,000 in interest-bearing warrants still outstanding.

The failure to make any provision for interest in 1934-1935 is a plain and glaring neglect of duty. We will not condone a course of conduct which, if pursued, will saturate the sinking fund of the school district with funding bond and judgment indebtedness when a timely and proper effort is made to avoid such consequences.

The excise board rightfully inserted the item of appropriation. In so holding, we do not imply that the excise board may substitute its judgment for that of the school board in matters involving discretion in the management of school affairs. The necessity of including in the estimate of needs a sum sufficient to take care of interest on warrants is not a matter of discretion. Neither do we hold that the sum must be in a separate item, although needless confusion probably will result if it is not. The important thing is that provision must be made to meet this obligation imposed by law.

The judgment of the trial court on this question is reversed.

The case is remanded to the trial court, with directions to enter its judgment and issue a peremptory writ in accordance with the views herein expressed.

McNEILL, C. J., OSBORN, V. C. J., and RILEY, WELCH, BAYLESS, GIBSON, PHELPS, and CORN, JJ., concur.