**PROTEST OF ST. LOUIS-S. F. R. CO.**
**et al.**

No. 25615.   Dec. 18, 1934.

J. W. Jamison and Cruce, Franklin & Satterfield, for plaintiff in error.

Lewis R. Morris, Co. Atty., and B. C. Logsdon, Asst. Co. Atty., for defendant in error.

WELCH, J. This is an appeal by the protestant from a judgment of the Court of Tax Review denying its protest as to certain taxes levied for the fiscal year commencing July 1, 1933, for Oklahoma county, and some of its political subdivisions.

The first question presented involves a controversy as to the amount of surplus on hand in the county general fund on June 30, 1933. Protestant contends that, on June 30, 1933, there was a current surplus to the credit of defendant's general fund of $11,453.97 more than was calculated and used by the appropriating authorities in establishing the rate of the general fund levy, and that had this additional amount of alleged current surplus been used, the rate of levy would have been reduced 1.54 mills.

The facts are that prior to and up to March, 1933, the county had continued to collect taxes levied for the former fiscal year 1930-31, and had collected of the taxes levied for the fiscal year 1930-31 the sum of $13,173.04 more than the total sum necessary to pay all of the 1930-31 general fund warrants. This sum, in March, 1933, was on hand in cash. On March 21, 1933, the county excise board made a supplemental appropriation of $27,302.82. This amount supplementally appropriated was composed of the aforesaid sum of $13,173.04, together with additional surplus created by the cancellation of certain prior existing appropriations for the fiscal year 1932-33, which appropriations had been determined to be not necessary, and therefore canceled. Upon the making of this supplemental appropriation, the aforesaid sum of $13,173.04 was deposited in and credited to the general fund for the fiscal year 1932-33, and together with other moneys then in and thereafter coming into the general fund, was used for the balance of the fiscal year to pay warrants on the general fund for that fiscal year, and at the end of that fiscal year,

on June 30, 1933, there remained and existed, in fact, a surplus of cash on hand over and above warrants issued on the general fund in the sum of $1,719.07. The difference between that actual surplus and the sum of $13,173.04, is, by mathematical calculation, the sum of $11,453.97, and is the sum involved in this controversy.

It is protestant's contention that the taxing authorities were without legal right to make the supplemental appropriation on March 21, 1933, supplementally appropriating the aforesaid sum of $13,173.04 theretofore collected on the taxes levied for the former fiscal year in excess of the obligations of that year. And the plaintiff contends that therefore the taxing authorities should treat said sum of $13,173.04 as not having been supplementally appropriated, and should treat that as being the surplus on hand in money, existing at the beginning of the fiscal year 1933-34, instead of treating the surplus as being the sum of $1,719.07, the amount actually then remaining on hand.

This amounts to the contention that the excise board, at the beginning of the fiscal year 1933-34, should have considered and treated as a cash surplus on hand, funds and moneys which were not then actually on hand, but which had theretofore been appropriated and expended. The contention is based upon the alleged illegality of the appropriation and expenditure of that money, but we think that for the purpose of the question here under consideration it is immaterial whether the former appropriation and expenditure of this money was or was not correct. The gist of the question here is, What legal assets or surplus cash did the county have to the credit of its general fund on June 30, 1933? This question is answered by a calculation of the assets and cash actually on hand without regard to what cash would have been on hand had some prior appropriation and expenditure not been made. If the March 21, 1933, supplemental appropriation had not been made, then the aforesaid sum of $13,173.04 would have been on hand June 30, 1933, but that appropriation was made and funds thereafter expended in accordance with that supplemental appropriation, and on June 30, 1933, the actual cash on hand was $1,719.07, which last-named sum was correctly taken into consideration and calculated by the excise board in making appropriations for the fiscal year 1933-34. Even if the March 21, 1933, supplemental appropriation was improperly made, that does not change the

fact that on June 30, 1933, the surplus cash on hand was not $13,173.04, but was, in fact, $1,719.07. If this $13,173.04 had never, in fact, been collected, it could not be calculated as being on hand on June 30, 1933, merely because it should have been collected. Likewise, having been collected, but having been supplementally appropriated and spent, it could not be calculated as being on hand on June 30, 1933, merely because it should not have been expended on supplemental appropriation. In calculating the amount of cash on hand on June 30th of each year, there is no legal authority for calculating as cash on hand funds which have theretofore been on hand, but which prior to June 30th have been expended on supplemental appropriation. This is true whether the supplemental appropriation was correctly made or not. If expenditures had been illegally made, the funds wrongfully paid out might be recovered and returned to the county by proper action therefor, but that creates no authority to sustain protestant's theory to calculate funds not on hand as being on hand for the purposes here considered.

Protestant urges that this fund could not be supplementally appropriated on account of the character of the fund, it resulting from collection of the added 10 per cent. for delinquent taxes. However, it is not necessary to here pass on that question. The money which was not on hand June 30, 1933, could not properly be calculated as being on hand as a cash surplus. See Bristow Battery Co. v. Payne, 123 Okla. 137, 252 P. 423; Gulf, C. & S. F. Ry. Co. v. Excise Board of Love County, 141 Okla. 34, 283 P. 1003; Protest of Bledsoe, 161 Okla. 227, 17 P. (2d) 979; Protest of Downing, 164 Okla. 181, 23 P. (2d) 173; Protest of St. L.-S. F. Ry. Co., 166 Okla. 147, 26 P. (2d) 744.

The tax protest on this ground was properly denied by the Court of Tax Review.

The next question involves an alleged excessive levy for county sinking fund purposes. The item in question concerns a levy for accruals on courthouse bonds which matured December 1, 1933. They were 30-year bonds. It is undisputed that annual levies for 26 years had been made sufficient to raise $3,333.33 per year; that for three years after the decision in Jones v. Blaine, 149 Okla. 153, 300 P. 369, annual levies were made sufficient to raise $3,448.29 per year. That this made a total of 29 annual levies, and was sufficient to raise only the amount of $97,011.45. The bonds were in

the amount of $100,000, and there was an actual deficit in the sinking fund. It is to be seen that the total levies theretofore made were $2,988.55 short of the amount necessary to retire the bonds, and the levy in question was for the latter amount. The issue raised on this point is fully decided in the recent case of Excise Board of Stephens County v. Chicago, R. I. & P. Ry. Co., 168 Okla. 523, 34 P. (2d) 268, which opinion was handed down subsequent to the filing of plaintiff's brief. Upon the authority of the Stephens County Case, supra, the judgment of the Court of Tax Review is sustained as regards this item of the protest.

The third question involves the authority of the county excise board to make levies for general fund purposes for various townships of the county subsequent to August 15, 1933, at which time section 9, art. 10, of the Constitution was amended.

The ruling of the Court of Tax Review on the question is stated as follows:

"We hold they could only pay the debts due on August 15, 1933, and we will make the same ruling as was made in the Rock Island Case. We hold they could pay lawful contracts and claims unpaid August 15, 1933. The protest is denied as to the townships."

It is not contended by the plaintiff that the appropriation in question was intended for payment of any claim against the townships accruing subsequent to August 15, 1933. They contend, however, that the power of the excise board to make any appropriation for general fund township purposes was withdrawn on August 15, 1933, by amendment. They do not deny that such authority existed prior to the amendment.

An examination of the amendment in question as voted by the people discloses the following proviso therein:

"Provided, also, an additional levy may be made each year, in the state and in the various subdivisions thereof, on all personal and real property subject to ad valorem taxes, to reasonably take care of bonded and other valid indebtedness of the state and its various subdivisions existing at the time this amendment is adopted and becomes effective, but such necessary additional levy or assessmen on such property to take care of such indebtedness existing and owing by the state and its subdivisions at such time shall in no event exceed levy or assessment for which such property would have been liable under the Constitution and laws of the state as same existed immediately prior to the adoption of this amendment."

126

It not being contended or shown by the record that such appropriations and levy were to be used for any purpose other than to "take care of bonded and other valid indebtedness" of the townships, we conclude that the judgment of the Court of Tax Review is correct in denying this ground of protest.

Finding no errors in the judgment of the Court of Tax Review, the same is in all things affirmed.

RILEY, C. J., CULLISON, V. C. J., and McNEILL and BAYLESS, JJ., concur.