EXCISE BOARD OF OKLAHOMA COUNTY et al. v. CONTINENTAL OIL CO. et al.

SAME v. ST. LOUIS-S. F. R. CO et al.
SAME v. LOWDEN et al.

Nos. 26360, 26383, 26384.   Sept. 25, 1935.

found was on hand and should have been so considered.

The determination of this question depends on whether the taxing officials were correct in treating certain unpaid warrants as a liability. The facts are not questioned that the warrants had been issued and remained unpaid. The protestant asserts that the warrants were not legally issued so as to constitute a liability chargeable against the general fund as they were so charged by the excise board.

The facts are that the warrants were issued while a tax protest was pending, and such protest had not yet been finally determined at the end of the fiscal year. However, we must assume in this case, and for the purpose of this question, that the warrants were legally issued. There is nothing whatever in the record to show the contrary. Section 12315, O. S. 1931, authorizes the issuance of warrants, pending determination of protests, for certain specified purposes. Protestee asserts that all these warrants were issued for those specified and authorized purposes. That is in no manner controverted by the protestant. There is nothing whatever in the record to show that any such warrant was issued for any other purpose. The evidence offered by the protestant merely shows the aggregate amount of all of the warrants issued.

Since the warrants were issued within the appropriation made by the excise board, presumably and apparently for a lawful purpose, and issued with legal authority for such purposes, and within the constitutional limitation, we hold that a protestant desiring to allege the illegality of such warrants as constituting a liability chargeable against the general fund would have the burden of proving such illegality. This the protestant failed to do.

The tax pending protest referred to was decided by this court in Branch v. Excise Board of Oklahoma County, 171 Okla. 585, 43 P. (2d) 90, and the ground of protest here discussed by the parties was in all things denied.

Having concluded that the warrants here involved were legally issued, it follows that the excise board properly considered them as a liability against the general fund, in arriving at the conclusion that there was no surplus balance on hand to the credit of that fund. The Court of Tax Review was in error in eliminating these warrants from that calculation, and erred in the resulting conclusion that there was a surplus balance on hand to the credit of the general fund.

Lewis R. Morris, Co. Atty., B. C. Logsdon, Asst. Co. Atty., and Frank Wilkins, for plaintiff in error.

Mastin Geschwind, for defendants in error in case No. 26380.

Cruce, Satterfield & Grigsby, for defendants in error in case No. 26383.

Bleakmore, Barry, Farmer & Lee, for defendants in error in case No. 26384.

WELCH, J. One of the questions presented by protests of the taxpayers involves an alleged general fund surplus balance on hand amounting to $158,315.51, which was not taken into consideration by the school board or the excise board in fixing the rate of levy, but which the Court of Tax Review

The order and judgment of the Court of Tax Review in regard to this item of protest is reversed, and that court directed to deny such item of the protest.

Another question involves the action of the Court of Tax Review in ordering the cancellation of $59,792.45 of appropriations made for purposes authorized and wholly legitimate, and directing that an appropriation equal to that amount be made for the purpose of interest on general fund warrants. The protestants in support of the order of the Court of Tax Review in this regard pointed to Morley v. State ex rel. Board of Education, City of Tulsa, 171 Okla. 46, 47 P. (2d) 170, wherein the court emphasizes the fact that it was the duty of the taxing officials to reserve an adequate amount of assets for interest on general fund warrants. We are entirely sympathetic with the laudable efforts on the part of the protestants and the Court of Tax Review to procure an appropriation in this regard, but we are unable to find authority of law which justifies the action taken. Relief cannot be had in this regard by resort to the Court of Tax Review.

The Court of Tax Review is a court of special and limited jurisdiction. It is apparent from an examination of the authority granted to it by law that its power is limited to questions which involve only the legality or illegality of a levy and to the making of such orders as are necessarily incidental to the correction of a levy. The order made by the Court of Tax Review which we have under discussion here does not in any wise affect the tax levy. Muskogee County Excise Board v. B. F. Stubbs, 172 Okla. 435, 45 P. (2d) 721. The order and judgment of the Court of Tax Review in this regard is reserved and that court is directed to deny such item of protest.

A further question raised by the protestants involves an alleged general fund surplus balance amounting to $186,133.54, which the taxing officials failed to take into consideration in making the levy. The complaint in this regard is based upon the contention that supplemental appropriations in an equal amount made during the fiscal year 1933-34 were invalid and unauthorized, and that the warrants issued and contracts made in pursuance of said supplemental appropriation were unauthorized, and were unpaid, and that the money had not actually been spent.

The first ground assigned in support of the contention that the supplemental appropriations were invalid is that section 12680,

O. S. 1931, which is the statute governing the making of supplemental appropriations, is unconstitutional as being in violation of section 57, article 5, of the Constitution. Our attention is called to the title of House Bill No. 418 of the 1917 S. L., c. 226, of which section 12680, O. S. 1931, was a part. We quote the title as follows:

"An act amending section 7379, Revised Laws of Oklahoma 1910, providing for an excise board for counties, defining its powers and duties, providing for tax levy on ad valorem basis for county, townships, city, towns, school district purposes, and prescribing a uniform system of accounting therefor; and repealing sections 6765, 6766, 6767, 6768, 6769, 6770, and sections 7378 and 7380, Revised Laws of 1910, and amending section 4, chapter 80, Session Laws of Oklahoma, 1910-11, providing for the consolidation of county funds, except sinking funds, and for the defraying of all expenses of county and municipal government by appropriations by the excise board."

It is urged by protestants that prior to 1917, and the passage of House Bill No. 418, supra, there was no provision of law for making supplemental appropriations, and they suggest that the inclusion of what is now section 12680, O. S. 1931, in the act referred to was an entirely new departure from the usual method of making appropriations for the various subdivisions of government. They urge that an examination of the title of the act above-quoted offers no clue or suggestion from which one might conclude that the Legislature intended to deal in the body of the act with the matter of supplemental appropriations. We do not agree with the protestants' contention. It is observed that the title provides for an excise board and for a definition of its powers and duties and "for the defraying of all expenses of county and municipal government by appropriations by the excise board." A supplemental appropriation is an appropriation as much as an original appropriation. What is now section 12680, O. S. 1931, and which was a part of the body of the act, is nothing more than some of the details of the duties and powers of the excise board in relating to the time, manner, and method of making appropriations. As was said in Johnson v. Grady County, 50 Okla. 188, 150 P. 497, cited by protestants;

"This provision of the Constitution, as shown by the great weight of authority, was directed at hodge-podge and log-rolling legislation; and was to prevent surprise and fraud in legislation; and was to prevent provisions being inserted in bills not germane to the question under consideration so that no 'jokers' could be run over the unsuspecting."

When such purpose is served, it is our view that the provisions of section 57, art. 5, of the Constitution are fully satisfied. In State ex rel. v. Pitts, 137 Okla. 59, 277 P. 918, this court said:

"It is a rule of universal application that a statute will not be held unconstitutional on the ground that the object or subject is not expressed in the title unless the title is clearly insufficient. Any other view would seriously hamper legislation and would be productive of much evil."

We conclude that the provision of what is now section 12680, O. S. 1931, is well within the clear and ordinary meaning of the title to the act.

In connection with this same item of protest the protestants contend that, even though section 12680 be held constitutional, under the provisions thereof the funds so employed for supplemental appropriations were not available for such purpose. This contention appears to be based upon the assumption that the supplemental appropriations were based upon or financed by surplus revenue collected during the fiscal year 1933-34 from 1931-32 and previous fiscal year tax collections. They suggest that the provisions of the law relating to the making of supplemental appropriations provide that such supplemental appropriations may be made only when a financial statement reflects income and revenue in excess of that provided or accumulated for the year. We agree with them in this suggestion but do not agree that such revenue as here discussed is not income and revenue provided or accumulated for the year in which the supplemental appropriations were made. We held in Gallion v. Excise Board of Oklahoma County, 171 Okla. 76, 42 P. (2d) 508. that such funds when collected in excess of the requirements for which originally pledged or levied immediately became a portion of the fund of the fiscal year in which collected. The funds are not distinguishable from any other 1933-34 fiscal year general fund item, and are properly usable in that fiscal year for legal purposes. It is not made to appear to us wherein such supplemental appropriations were otherwise illegal. Having reached the conclusion that the statute providing for supplemental appropriations is not violative of section 57, art. 5, of the Constitution, and that the funds in question may have properly formed a basis for making supplemental appropriations, it becomes unnecessary for us to consider the question of whether or not the money was actually spent and disposed of. The order and judgment of the Court of Tax Review on this item of protest is re-versed, and that court directed to deny such item of protest.

The protestee also assigns as error the action of the Court of Tax Review in determining that the taxing officials should have estimated $10,358.44 more receipts from sales tax apportionments than was so estimated. The school board and excise board estimated receipts from sales tax in the amount of $93,-645.32, which was the amount actually collected and received by the school board during the previous fiscal year. The amount added thereto by the Court of Tax Review represents sales tax collections by the state for June, 1934, which amount had not been ascertained or apportioned and received by the school board on June 30, 1934, when it prepared its financial statement and estimate of needs.

Section 12678, O. S. 1931, as amended by Laws 1933 c. 85, provides that the taxing officials shall not estimate receipts from sources other than ad valorem taxation in excess of the amount actually received from such sources the immediately preceding year. A discussion of the limitation thus imposed was had in the recent case of Sinclair Prairie Pipe Line Co. v. Excise Board of Seminole County, 171 Okla. 382, 42 P. (2d) 501. Protestants assert, however, that these particular funds and the estimates thereof are not governed by the general law relating to collections from sources other than ad valorem taxation. but they say that chapter 196, S. L. 1933, known as the Oklahoma Sales Tax Law, specifically provides how the taxing officials should estimate these receipts for the purpose here discussed. They call attention to the fact that the fund was specifically pledged for the reduction of ad valorem taxation, and to the provisions contained in section 2 of the act to the effect that;

"In making estimates of receipts, other than from ad valorem taxes, for the various school districts, the county excise boards shall ascertain the amount of receipts allocated to each such school district for the first calendar month of the operation of this act, and shall multiply such sums by twelve (12), to ascertain the amount of revenue to be applied under this subsection to the reduction of ad valorem taxes to be levied for the fiscal year ending June 30, 1934."

It is apparent from the language of the quoted excerpt that for the fiscal year ending June 30, 1934, the Legislature did not intend the general law limiting the estimate to not to exceed the receipts during the previous year to apply, and a specific provision was made to govern the estimate of such

receipts for the fiscal year ending June 30, 1934. We find, however, in the act nothing which we consider indicates an intention on the part of the Legislature to provide for such estimates other than as provided by general law, except for the first fiscal year of its operation. Had the Legislature so intended to provide otherwise, the language doubtless would not have been restricted to the first fiscal year of its operation. It is to be observed that the Legislature referred to these anticipated receipts as being estimates of receipts other than from ad valorem taxes, which would further indicate that it intended making the general law relating to estimates of such receipts apply, except, however, that the restriction was not imposed the first year for the obvious reason that such restriction would have delayed the estimate of any receipts until the second year after the beginning of the operation of the law.

The estimate of the receipts here for the fiscal year 1934-35 was properly controlled by the general law as found in section 12678, O. S. 1931, as amended by Laws 1933, c. 85, and as discussed in the Excise Board of Seminole County Case, supra. We therefore conclude that the Court of Tax Review erred in its order and judgment in this regard, and the same is reversed, with directions to that court to deny that item of protest.

The final question presented involves a protest of the levy for the sinking fund. During the fiscal year 1933-34 the school board sold a school building to the separate school district for the sum of $100,000. The building ,which was sold had been constructed from the proceeds of the sale of bonds, and the bonds remained unpaid at the time of the sale of the building. The school board used the proceeds of the sale of the building for the purpose of constructing additions to various others of its school buildings without seeking appropriations by the excise board for such purposes. The protestants contend that the $100,000 should have been placed in the sinking fund, but that it was not placed in the sinking fund but was placed in the general fund, and that because of the fact that on June 30, 1934, there was more than that much actual cash in the general fund the money should be treated as not having been spent, and should be treated as being transferred from the general fund into the sinking fund. The Court of Tax Review sustained the protest and ordered $100,000 reduction in appropriations

of the general fund, and a consequent reduction of the sinking fund levy.

It is to be observed that a great number of legal questions would be involved were it not for the fact that the protestants' theory that this $100,000 was placed in the general fund by the school board is not supported by the record. . The testimony of witnesses is only to the effect that the building was sold, and that the money was spent for additional buildings or additions to other buildings without appropriations. This testimony itself would indicate that the money was not placed in the general fund. From such testimony it could as easily be contended that the money was placed in the sinking fund and spent out of that fund, although it would be more reasonable to assume from such testimony that the money was not placed in either of the funds. Furthermore, an examination of the financial statement included in the record itemizes the receipts which were placed to the credit of the 1933-34 general fund and which go to make up the amount of cash remaining on hand in such fund on June 30, 1934, and this $100,000 item is not included therein, and it is our view that the detail statement of the items which make up the cash on hand on June 30, 1934, does not show the inclusion therein of the $100,000, and it appears obvious that the $100,000 item involved could not form any part of the cash on hand in such fund at the end of that fiscal year. We express no opinion as to whether or not the funds were used correctly or incorrectly, or whether the order of the Court of Tax Review is correct in other particulars. The proceeds of the sale of the building were not placed in the general fund, therefore, it cannot be said upon any theory that any alleged depletion of the sinking fund must be corrected by transfer of funds from the general fund.

The order and judgment of the Court of Tax Review as to this item of protest is reversed, and the court directed to deny such item of protest.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS and CORN, JJ., concur. GIBSON, J., concurs in part and dissents in part. RILEY, BUSBY, and PHELPS, JJ., absent.

GIBSON, J. (dissenting in part). I concur in the rules of law announced in syllabi 1 to 7, inclusive. I dissent as to the syllabus 8. I concur as to syllabus 9, and agree that the record in this case does not show that the proceeds of the sale of the school building sold by the board of education was placed to the credit of the general fund, and for

that reason the protest was erroneously sustained by the Court of Tax Review. Such proceeds should have been placed to the credit of the sinking fund. Protest of Reid et al., 160 Okla. 3, 15 P. (2d) 995. The money derived from the sale of the school was not accounted for in the budget of the school district; it was not placed to the credit of either the general or sinking fund, but was spent, without being appropriated. In my opinion this constituted an unlawful expenditure of public funds. A public officer may not disregard the statutory requirements relating to the expenditure of public funds. Neither the good faith of the public officer nor the financial advantage to the school district can excuse the conduct of the public official in this transaction.