MID-CONTINENT PIPE LINE CO. et al. v. CREEK COUNTY EXCISE BOARD.

No. 35373. Sept. 30, 1952.

Rehearing Denied Oct. 21, 1952.

*249 P. 2d 79.*

Mastin Geschwind, Oklahoma City, for plaintiffs in error.

Clyde Patrick, Co. Atty., Creek County, Sapulpa, for defendant in error.

BINGAMAN, J. Mid-Continent Pipe Line Company and Texas Pipe Line Company, both corporate taxpayers in Independent School District No. 33, (Sapulpa) Creek county, protested certain tax levies made and approved by the excise board to finance general fund and sinking fund needs of the school district. Protestants charged that the tax levies so made are excessive and illegal to the extent that a certain cash surplus belonging to the district and available for appropriation to general fund purposes was not taken into account in the determination of the ad valorem tax requirements of the district for the current fiscal year.

On hearing before the Court of Tax Review it was shown that during the year ending June 30, 1951, officers and employees of the school district had collected revenues for use of facilities and services furnished by said school district in a total sum of $10,917.46; that of said sum $6,761.29 was derived from rents for use of a property owned by the district, and over $4,000 was derived from fees collected from those enrolled in various special classes or courses. These collections, together with other funds derived from various student activities, were not deposited with the regular treasurer of such school district, but were placed in the hands of a custodian named by the board of education of the school district and were retained by such custodian in a bank account subject to withdrawal by his check. The fund so established was known as the "general activity fund of Independent School District No. 33, of Creek County, Oklahoma," and was handled by this special custodian under the supervision of the board of education. Other funds were also deposited to this account and during the fiscal year numerous checks were is-

sued against the fund. However, there remained on hand, on June 30, 1951, an admitted balance with this custodian in the amount of $9,821.88.

None of this balance was on deposit with the treasurer of the school district and none of such balance was subject to his jurisdiction or control. When the estimate of needs for the fiscal year in question was prepared by the school district, none of these funds were shown as surplus cash on hand and none of the same were considered by the county excise board in determining the levy for the year in question.

Whether this special activity fund contains items of collection which should have been deposited to the general funds of the district is a matter sharply contested between the school district and the protesting taxpayers. The Court of Tax Review did not pass on that issue, but denied the protest for the reason the fund "was not and is not in the hands and custody of the lawful treasurer of the governmental subdivision," and therefore it was not a surplus which could be used to reduce the levy. We think the Court of Tax Review correctly so held and it is therefore unnecessary to determine whether all of these items of collection were properly diverted into the "activity fund."

By the provisions of 62 O.S. 1951 §335, all monies belonging to a school district are required to be paid over to the official treasurer thereof. By 19 O.S. 1951 §681, the county treasurer is made the official depository of county funds. In considering surplus funds involving a county, this court, in St. Louis-S. F. R. Co. v. Choctaw County Excise Board, 173 Okla. 312, 48 P. 2d 312, held that funds due such county "could not be included in a financial statement as an asset until received by the treasurer of the municipality involved."

In Empire Pipe Line Co. v. Excise Board of Carter County, 164 Okla. 126, 23 P. 2d 189, where the protesting taxpayer sought to have the school district levy reduced by reason of funds in the hands of the county treasurer which had been apportioned to the independent school district, but had not been paid over to the treasurer of the district, we held that the funds not being in the possession of the treasurer of the independent school district could not be considered in the financial statement. To the same effect is Protest of Chicago, R. I. & P. Ry. Co., 151 Okla. 137, 1 P. 2d 674, where it was sought to reduce the levy by reason of interest on hand with the State Treasurer. The same rule was adopted by us in Protest of Chicago, R. I. & P. Ry. Co., 150 Okla. 167, 1 P. 2d 383, wherein we held:

"The funds in the hands of the State Treasurer which have been apportioned by the State Auditor to the school district, but which have not been paid to the county treasurer for the benefit of the school district at the close of the fiscal year, may not be considered in the financial statement and estimate of needs for the ensuing fiscal year."

In the case of Protest of St. Louis-S. F. Ry. Co., 166 Okla. 147, 26 P. 2d 744, the protesting taxpayer sought to have the levy reduced by the amount of funds which had been actually collected during the fiscal year, but which had been unlawfully expended and were therefore not actually on hand. We held "the excise board is without authority of law to consider as a part of the surplus balance of revenue or levy on hand any amount which is not in existence, even though the amount was unlawfully expended." To the same effect is Protest of St. Louis-S. F. Ry. Co., 170 Okla. 123, 39 P. 2d 99.

It is urged by protestants that this case is controlled by Protest of Bledsoe, 161 Okla. 227, 17 P. 2d 979, and Protest of St. Louis-S. F. Ry. Co., 143 Okla. 145, 288 P. 307, wherein we held that where funds had been illegally apportioned or transferred from one

fund to another, the excise board and the Court of Tax Review had authority to consider the improperly transferred fund, if it was still on hand with the treasurer of the municipality. In each of those cases, however, the fund was unexpended and was in the possession of the treasurer of the municipality. The correction of the illegal transfer was therefore simply a bookkeeping transaction in the treasurer's office. In the case at bar we do not have a similar situation. Here the funds have never been in the possession of the school district treasurer. Both the excise board and the Court of Tax Review are without authority to compel the return of such funds by the custodian of the "activity-fund" of the school district. The funds may or may not be recovered in some independent proceedings and until such time as they are actually received by the lawful treasurer of this school district, they cannot be considered as cash surplus on hand for purposes of computing the estimate of needs.

The judgment is affirmed.

CORN, GIBSON, DAVISON, and JOHNSON, JJ., concur. HALLEY, V. C.J., and WELCH and O'NEAL, JJ., dissent.

WELCH, J. (dissenting). In the trial of this cause it was stipulated as follows:

"4. That on June 30, 1951, Independent School District No. 33 has on deposit in its 'general activity fund' in the American National Bank of Sapulpa, Oklahoma, the sum of $9,821.88."

Now all would agree that "funds on hand" and "funds on deposit" are synonymous terms if the deposit is in a solvent bank and subject to the check or the order of the owner of the deposit. But the majority opinion reasons that as to the taxpayers, or as to tax levies, the district does not have this $9,000 at all because the district does not have it deposited in its official treasury account, but instead has it deposited in its so-called general activity fund or account. The majority opinion holds in effect that if the school district had this sum on deposit in its "regular treasury account" it would be on hand, but since the school district has this money on deposit in the bank in its "special activity fund" or "account", it does not have it on hand.

I think that reasoning rests on a narrow base, far too narrow when applied to public funds, which are wrongfully deposited by the district officials, and if they are not on hand, it is merely because of the erroneous deposit or mishandling or misplacing of the funds. That is not a sound decision. That is not sound municipal financing.

The majority opinion would apparently take the same view if all this $9,000 belonged to the school district and was all wrongfully diverted to this so-called special deposit. That magnifies the error of the majority opinion.

The fact is that all the money diverted to this special deposit during the year, included this $9,821.88, may be divided into two classifications. As to the first classification, it is certain, and without contradiction, that some part of the fund (exact amount not determined) never was the property of the district, but was always the property of separate and outside activities. As a second classification, it is equally certain that a portion of that money (exact amount not determined) was always owned by the district, never owned by any one of the separate outside activities, and should have been properly deposited by the district in its regular treasury account and was improperly or illegally deposited in its special account.

But after all, what difference does it make? The money is actually there. It is fully available to the district. The board has full access to the money and to the account or deposit through its own custodian, who acts on direction of the board. The board never personally handles school district money or funds. It always handles such money through an agent or an official or an

appointee. The board appoints this trustee, but the board also appoints its treasurer. Now if a school district has money belonging to the district on deposit in its treasury account available for use or expenditure by action of the board, and the school district has money belonging to the district on deposit in its activity account available for use or expenditure for school district purposes by action of the board, how can it be said that one such fund or account is the property of the district as an asset, while the other is not?

Can school district officials deprive the district of the ownership and use of money belonging to the district merely by wrongfully depositing that money in one of its accounts or deposits where it could never rightfully go? Surely not. No more than they could deprive the district of the ownership and use of its real property merely by wrongfully passing the record title thereof to one of its appointees who had no right whatever to receive such title.

The majority opinion seeks to draw support from six decisions cited therein, but I respectfully submit they are not in point. Those decisions are: Protest of Chicago, R. I. & P. Ry. Co., 150 Okla. 167, 1 P. 2d 383; Protest of Chicago, R. I. & P. Ry. Co., 151 Okla. 137, 1 P. 2d 674; Empire Pipe Line Co. v. Excise Board of Carter County, 164 Okla. 126, 23 P. 2d 189; St. Louis-S.F.R. Co. v. Choctaw County Excise Board, 173 Okla. 312, 48 P. 2d 312; Protest of St. Louis-S. F. Ry. Co., 170 Okla. 123, 39 P. 2d 99, and Protest of St. Louis-S. F. Ry. Co., 166 Okla. 147, 26 P. 2d 744.

In the first case cited, Protest of Chicago, R. I. & P. Ry. Co., 150 Okla. 167, 1 P. 2d 383, the money involved was in the hands of the State Treasurer, and while it may have been apportioned by the State Auditor to the school district, it was not transmitted to the county treasurer of the county involved until July 16th, and was by him apportioned to the school district in August. Of course, as to the school district, that

money was in no sense on hand on or prior to the preceding June 30th. It had not in any manner been collected or received by the school district or any official or agent or appointee thereof by or before June 30th. Contrary to that, in the present case, the money involved had been fully collected and received by the school district before June 30th, and, as shown by the stipulation, was on hand on deposit on June 30th.

The second cited case, Protest of Chicago, R. I. & P. Ry. Co., 151 Okla. 137, 1 P. 2d 674, involved money collected by the State Treasurer as interest on money which the county had deposited with the State Highway Commission. This interest money which had not yet been disbursed or paid to the county was not money on hand in the county as a cash asset of the county, because the county had not yet received it. That decision held such money constituted an indebtedness due to the county and not actual cash on hand in the county's assets until the county had collected it. This case is not in point for the same reasons as stated above in reference to the first-cited case.

In the third cited case, the Empire Pipe Line case, the money involved was held by the county treasurer and may have been apportioned to the school district to be paid to the school district, but it had not yet been paid to the district or to the treasurer of the independent school district. That is, the money was still held by the county treasurer. That money was not subject to any action or order of the board of education of the school district, and had never been received by the district or by any officer, agent or appointee thereof. That is directly the opposite of the facts in the instant case.

In the fourth cited case, the Choctaw county case, the quotation shown in the opinion was a statement of what had previously been held in the first above-cited case, where, as we have observed,

the money was held in the hands of the State Treasurer for the benefit of the school district, or for future payment to the district. In that case, this court was discussing the situation as between the two treasurers, the State Treasurer and the county treasurer, and that would account for the specific reference to the treasurer of the municipality involved. This Choctaw county case involved money which had not been collected at all. Its collection was only estimated or anticipated in the future, and, of course, it could in no sense be on hand or on deposit anywhere until it was collected or received by some one.

In these first four cases cited the money involved had never come into the hands of any officer of the municipality involved.

The fifth cited case, Protest of St. Louis-S. F. Ry. Co., concerned money which had been collected and had been properly on hand, but which had been expended prior to June 30th. That decision merely held that such money did not remain on hand on June 30th because it had been spent. It could not be a cash asset on June 30th and was so held, and it was stated that such would be the rule notwithstanding the illegality of such expenditure. That decision would be in point here if this money had been expended either legally or illegally before June 30th. But here the money involved had not been spent as we are only dealing with money which remained on hand at the close of business on June 30th. We are not dealing with any money that went into this particular deposit and which was expended therefrom before June 30th. As to all money which went into this particular deposit during the fiscal year, and which was drawn out of that deposit and expended before June 30th, then, of course, that money so expended did not remain on hand on June 30th. But whatever money belonging to the school district which was wrongfully deposited in that account or deposit and which remained unexpended on June

30th, that money still belonged to the school district, and was on hand in such account as a cash asset of the Sapulpa school district involved in this case.

In the sixth case cited, Protest of St. Louis-S. F. Ry. Co., this court merely reiterated and applied the rule last above mentioned, that we cannot consider as being on hand "any amount which is not in existence, even though the amount was unlawfully expended."

By citing these last two cases, does the majority opinion intend to hold that when such a school district has collected and received money belonging to the district (and, of course, then constituting a cash asset of the district) and diverts it into such a special bank deposit as is here involved, under continued control of the board, that such act of itself takes such money away from the district and out of its assets, as if such money had thereby been dissipated? Does the majority opinion intend to imply or hold that as to all money belonging to the district and so deposited by the board, that merely by making such deposit the members of the board are personally liable to the extent of double the amount of such money under the statute, 62 O.S. 1951 §372 et seq? I would hope not. But that result necessarily follows if the mere making of such a deposit, or the diverting of such money into such account, operates of itself to take such money out of the cash assets of the school district.

It would be more logical and sound to hold that the erroneous deposit of such public money in such an account does not of itself constitute the expenditure or dissipation of such money, and that so long as such money remains on hand in such deposit under control of the board, and available for use by the board for school district purposes, it remains on hand as a cash asset of the school district.

I think this demonstrates that neither of those six cases is in point here where

the school district had actually collected this money and had diverted it into this fund where it was on hand on June 30th, and fully available for use and expenditure by action or order of the managing board of the district, and surely this $9,000, or such part of it as definitely belongs to the district, should be held to be on hand as a cash asset of the district.

As to the $9,821.88 on hand in this specific account or deposit, the majority opinion states that it is "unnecessary to determine whether all these items of collection were properly diverted into the activity fund." As applied to the facts and contentions here, that means it is unnecessary to determine what part of that $9,000 is owned by the district as a cash asset and was wrongfully diverted into its activity fund. And that conclusion means it is the same if all that $9,821.88 remaining on hand in the deposit is actually money belonging to the district as a cash asset.

Surely that conclusion is not sound, or I do not think it is sound. The opinion states there is a sharp contest between the parties as to the items diverted into this special account or deposit. Well, we ought to settle that contest. It is purely a contest or issue of law. The facts are not controverted. All we need do is apply the law to the facts and decide the issue. I think we should do that and should decide whether all or what part of the $9,000 is actually money belonging to the school district as a cash asset, and what part of the $9,000 is actually money belonging to the several outside activities.

Whatever part of that $9,000 is legally found to be actually owned by these outside activities, they surely have it on hand as a cash asset. Whatever part of that $9,000 is legally found to be actually owned by the school district, then the district had it on hand as a cash asset, and that is this lawsuit.

Under the rule of the majority opinion I see no escape from the conclusion that as to any school district money, from whatever source it comes, whether from taxation or other source, if it finds its way into this or some other special deposit, by inadvertence or design, such money is thereby taken away from the cash assets of the school district to the detriment of taxpayers, and the taxpayers and the school district are thereby deprived of its use as a cash asset though it remains on hand in such deposit, fully under the control of the board and available for any legitimate use.