**PUSHMATAHA COUNTY, OKLAHOMA, EXCISE BOARD, Plaintiff in Error,**

v.

**ST. LOUIS–SAN FRANCISCO RAILWAY COMPANY, a Corporation, Defendant in Error,**

No. 39058.

Supreme Court of Oklahoma.

June 21, 1960.

Rehearing Denied Aug. 2, 1960.

Lee Welch, County Atty.; Everett M. Robinson, Asst. County Atty., Antlers, for plaintiff in error.

G. E. Bailey, St. Louis, Mo., Franklin & Harmon, Okla. City, for defendant in error.

PER CURIAM.

The protestant, Railway Company, protested 1.12 mills of the total levy of 5 mills for the building fund of Independent School District No. 22, Pushmataha County, Oklahoma, for the fiscal year 1959-60.

The school district had a small surplus of cash on hand accruing to the general fund for the previous fiscal year 1958-59, which it could and did use to finance its estimated needs for general fund purposes for the fiscal year 1959-60.

Protestant made no objection to the statement of needs for the building fund for the fiscal year 1959-60 to be financed by the 5 mill tax levy. Protestant did contend that illegal expenditures had been made from the building fund by the purchase of three items or articles which protestant contended could not legally be purchased out of the building fund as or for building, furniture, fixtures or appliances. Protestant contends that these items should have been paid for from the general fund, and that the above-mentioned surplus accruing to the general fund for the previous year, or in effect a specified sum equal thereto, should now be ordered to be transferred to the building fund, thus reducing the amount necessary to be raised by taxation for the building fund for this year, and thus making unnecessary 1.12 mills of said building fund levy since a tax levy of 3.88 mills would raise the sum estimated as the need for the building fund, after adding to such fund the above-mentioned specified sum contemplated or urged for transfer from the general fund.

The Court of Tax Review apparently followed the contentions of protestant in sustaining the protest and reducing the building fund levy by 1.12 mills and ordering as in mandamus that the school board transfer the specified sum above mentioned from its general fund to the building fund.

In order to sustain this protest, or in considering such protest, three questions confront us: 1. Whether there is sufficient evidence to show that illegal expenditures were made from the building fund; 2. Whether the Court of Tax Review has authority to consider and to adjudicate that question in such a tax protest determination, and 3. Whether the Court of Tax Review has authority as in mandamus to compel the aforesaid transfer of funds

or to consider said transfer as accomplished, and therefore to treat as being on hand in the building fund the amount of money involved in the suggested order of transfer.

All these questions must be answered in the affirmative in order to sustain the protest, but we are unable to find an affirmative answer to either of these questions.

■ It has been held that when public funds have been expended by the issuance of warrants by public officials in the usual manner, one who alleges that such expenditures are illegal has the burden of proving the same. Excise Board of Oklahoma County v. Continental Oil Company, 173 Okl. 577, 49 P.2d 540.

■ There is no proof here except to show the amounts paid out of the building fund for an Electric Typewriter, Food Mixer and Dough Hook, and a Heyer Duplicator. There is no proof as to whether, or to what extent, such items are used or useful or necessary or unnecessary as part of the furnishings of any room or any building. It is too difficult for us to say or to acquiesce in the contention or conclusion that in every instance, without further proof, such purchases must be held to be illegal when made from the building fund of a school district. The law of Oklahoma has taken a liberal view as to the propriety of use of such a building fund.

In 1942 this Court held that this building fund levy could be specifically made to erect bleachers on the football field of a school district. Lowden v. Jefferson County Excise Board, 190 Okl. 276, 122 P.2d 991.

In the year 1941 this court decided Oklahoma County Excise Board v. Kurn, 189 Okl. 203, 115 P.2d 113, in which we held:

"The express power granted by Section 10, Article 10, of the Constitution Okl.St.Ann. to increase by vote of the people the rate of taxation limited by the Constitution 'for the purpose of erecting public buildings in counties, cities, or school districts' carries with it the implied power to apply a portion of the proceeds derived from such increase to the purchase of necessary equipment which permanently becomes a part of such newly constructed buildings."

And in the last paragraph of the opinion we held:

"We conclude that sec. 10, Art. 10 of the Constitution authorizing a direct levy for the purpose of erecting school buildings includes the inherent and implied power to apply a portion of the proceeds derived from such increase to the purchase of necessary equipment which permanently becomes a part of such newly constructed buildings, and we so hold. We further conclude and hold that seats and desks for such a building are proper and necessary equipment therefor. In so holding, however, we desire to make it clear that under our decision it is necessary to install said equipment as a part and parcel of the building when the erection takes place. Otherwise it would be in the nature of repairs which is not covered by section 10, supra."

Since that decision, and in the year 1955, this section of the Constitution was further amended to specifically include "remodeling or repairing school buildings," and the purchasing of "furniture" so that the constitutional amendment now in force authorizes use of this fund to construct, remodel, repair school buildings, and for the purchasing of furniture therefor. In 37 C.J.S. p. 1412, we observe this statement:

"Furniture. A comprehensive term of very broad meaning and general application, whose meaning changes so as to take the color of, or be in accord with, the subject to which it is applied. It has been variously defined as meaning anything which furnishes or equips; a supply of necessary, convenient, or ornamental articles, for any business or residence, or with which a residence is supplied; equipment, outfit, supplies; that which fits or equips for use or action; that which fits or supplies a house for use or which furnishes or is added to the interior of a house for

use or convenience; that with which anything is fitted out, furnished, or supplied; that with which anything is furnished or supplied for operation or use; those movables required for use or ornament in a dwelling, a place of business or of assembly; those readily movable articles which would be serviceable generally as household furniture without any special reference to a particular building. It is not confined in its meaning to such things as are necessaries to a family, but embraces about everything with which a house or anything else is or can be furnished. The term ordinarily relates to movable chattels; personal chattels in the use of a family; and applies to all personal chattels which may contribute to the use or convenience of the householder or the ornament of the house. * * *"

It is suggested in brief that there exists ample justification for school boards to expend building fund money as here involved, or bond moneys voted for "school furniture" to purchase and provide items of capital outlay such as refrigerators, typewriters,. sewing machines, and other items of school furniture and equipment which are reasonably essential as part of the officially authorized courses of instruction to be taught in our schools.

While that argument is impressive, it may be that we should not go fully that far in this case for lack of detailed proof, and perhaps for lack of issue thereon or specific jurisdiction in this proceeding.

We are convinced, however, that the record here is not sufficient to justify a conclusion that these expenditures were illegal.

 Upon the second question we are not cited with any authority of the Court of Tax Review to pass upon the question, or to adjudicate that illegality of expenditure in passing upon this tax protest. It is generally held that the Court of Tax Review is a special court with jurisdiction limited only to passing upon protests and the legality of tax levies, and that such

Court does not have jurisdiction to issue a judgment and decree as in mandamus. Muskogee County Excise Board v. Stubbs, 172 Okl. 435, 45 P.2d 721.

As pointed out in briefs there are actions available in courts of general jurisdiction in which the pleadings may form and include all the issues, and proof may be had as to the purpose of the purchase and the use of articles, wherein their legality of purchase could be adjudicated, and remedies, other than reduction of tax levies, could be applied.

The same limitations on the authority and jurisdiction of the Court of Tax Review leads to the conclusion that such court has no authority as in mandamus to compel such a transfer of funds as is here urged by the protestant. No authority is cited upholding such power in the Tax Court, and our former decisions seem to indicate that the Court of Tax Review is without power to issue such orders as in mandamus and to follow through with any enforcement thereof. We are impressed with the suggestion that protestant is in effect urging the Court of Tax Review, and this Court, to consider such transfer of funds as an accomplished operation and to treat this money as being on hand in the building fund when it in fact is not there. It has been expressly held that such reasoning cannot be applied to sustain a tax protest, though money formerly on hand in a specific fund has been illegally expended therefrom. Protest of St. Louis-San Francisco Ry. Co., 166 Okl. 147, 26 P.2d 744, Protest of St. Louis-San Francisco Ry. Co., 170 Okl. 123, 38 P.2d 99, and Stephens County Excise Board v. Lowden, 184 Okl. 563, 89 P.2d 324, and other cases therein cited.

On the whole, we are convinced that the record here does not authorize the sustaining of this tax protest. In such event it has been held that the tax protest should be denied. Chicago, R. I. & P. Ry. Co. v. Seminole County Excise Board, 170 Okl. 573, 41 P.2d 473.

In effect the sustaining of this protest would appear to result in a reduction of the

appropriations made for the general fund operation of this school district for the current fiscal year, while presumably the full amount estimated could be and might be urgently necessary to operate the school for the year, and the second effect would be to reduce the tax levy for the building fund for the current year without any illegality whatever having been shown in that levy. As we view the record the protestant has not shown any right to such relief.

The judgment appealed from is reversed, with directions that the protest be denied.

DAVISON, C. J., WILLIAMS, V. C. J., and WELCH, JOHNSON, JACKSON and IRWIN, JJ., concur.

BLACKBIRD, J., dissents.