TULSA COUNTY, EXCISE BOARD,
v. TEXAS-EMPIRE PIPE LINE
CO. et al.

No. 29860.   Sept. 17, 1940.

Rehearing Denied Oct. 29, 1940.

*106 P. 2d 792.*

Dixie Gilmer, County Atty., and John F. Conway, Asst. County Atty., both of Tulsa, for plaintiff in error.

Mastin Geschwind, of Oklahoma City, for defendants in error.

WELCH, V. C. J. One of the questions here is whether article 25, chapter 66, Session Laws of 1939, limits the rate of levy for governmental budget account to .2 of a mill less than the total millage rate allocated to the county by the excise board.

The facts are that the county commissioners did not request, nor did the excise board make, an appropriation for county audit purposes in an amount equal to the equivalent of .1 of a mill on the valuation, and while making a less appropriation for county audit purposes, larger appropriations for governmental budget account were made than would otherwise have been possible. The full millage allocation made by the excise board was levied.

Protestants assert that the 1939 act, supra, requires that an appropriation in amount equal to the equivalent of .1 of one mill be made for county audit purposes, and that such requirement results in limiting the appropriations and levies for other purposes to a levy of the total millage allocation less the .1 of one mill so required to be used.

We may concede for the purpose of this question that it was the purpose of the Legislature by the act to require the local taxing officials to provide an appropriation for county audit purposes in a given amount to be calculated as therein provided, and if such appropriations are actually made, the result would be less funds to appropriate for other purposes. But such result would only be incidental. The act nowhere discloses a deliberate purpose to limit or restrict the appropriations or levies for governmental account budget other than to the remainder unappropriated or not otherwise actually levied. If the commands of the legislative act actually resulted in an appropriation or levy of .1 of one mill, then obviously only the remainder could be used for other purposes. But if that mandatory purpose was sought, it cannot be denied that such purpose was not in fact accomplished in the present instance. There was no such appropriation or levy made in fact. And to sustain the present protest will not result in accomplishment of the asserted purpose of the Legislature in that regard.

We are convinced from a careful examination of the entire act and its title that the Legislature had no deliberate purpose to limit appropriations and levies for governmental budget account other than such as would incidentally result from the making of appropriations and levies for other purposes which it appears to require to be made. The act does not ipso facto make such other appropriations and levies, and in this case they were not in fact made, and there seems to be no means at the present time to enforce the will and purpose of the Legislature. To sustain the present protest would result only in accomplishing an incidental result not deliberately intended and resulting only if the primary and deliberate purpose were accomplished.

The purpose of the Legislature with respect to the matters under discussion could only be compelled by mandamus, which, if resorted to successfully, would have procured the proper appropriation for county audit purposes with the result of diminished appropriations and levies for other purposes. Such was not done and we cannot construe the legislative act as meaning that the levy for governmental budget account is restricted more than to whatever allocated millage there remains after deducting that portion of same which has theretofore actually been used for other proper purposes.

The Legislature has not seen fit to exercise its constitutional power to allocate the 15-mill limit of levy, and thereby remove such power from the county excise board. When it does, it should do so by definite expression.

The act here considered, as a whole, does not indicate such legislative intent. On the contrary, it definitely indicates

the contrary, that is, to leave the allocating power to the county board. Here the county board has performed that duty and the aggregate appropriations made are financed by a levy within the allocated limit of levy.

Assuming that the act does make it the mandatory duty of the local board to make certain appropriations, the act, as we have pointed out, does not itself make the appropriations. If a mandatory duty is not performed, those charged with performance may suffer the applicable penalties for such dereliction, but the penalty is not to consider that as done which ought to have been done, so as to create or result in a theoretical or so-called excess of aggregate appropriations, or excess of levy, subject to tax protest, when no such excess actually exists.

There is no excess levy, and no appropriation for illegal purpose, and no error or omission of duty subject to correction by sustaining a tax protest.

The judgment of the Court of Tax Review sustaining that ground of the protest is reversed.

A further protest concerns a general fund levy made to finance appropriations totaling $10,275 for district court reporters' supplies, expenses, etc., transcripts, jurors and witness fees, county court office supplies, etc., and for salary of probation officer. It is agreed that there was cash on hand in the sum of $13,000 in the "court fund," and that no part of such cash was used toward financing the general fund appropriations.

It is the theory of the protestant that the above-named appropriations are payable out of the court fund, and that it is necessary that the unencumbered cash on hand in that fund be used to finance the said appropriations. Protestants cite Protest of Bledsoe, 161 Okla.

227, 17 P. 2d 979, and other cases to the same general effect, which fully sustain their view if such cash ever becomes a part of the general fund of the county. See Gallion v. Excise Board of Oklahoma County, 171 Okla. 76, 42 P. 2d 508.

We examine now to determine whether such funds become a part of the county general fund. It is conceded that the cash is derived from sources enumerated in section 1, chapter 117, Session Laws of 1933. That chapter designates such funds when received as "the court fund," and section 2 thereof provides that it shall be paid out by the issuance of a "cash voucher on said fund." We think the fact that such funds are paid out on "cash vouchers" effectively precludes the same from becoming a part of the county general fund as defined in the Gallion Case, supra. General fund moneys are disbursed only upon general fund warrants. Certainly these funds disbursed on cash vouchers could not properly be used to finance general fund appropriations against which only general fund warrants are issued.

It is not shown that this cash on hand is no longer needed for the purpose of the "court fund" as established by the 1933 Act, supra, nor that the $13,000 cash in the fund could or might be disbursed otherwise than upon cash vouchers as provided in the act.

There is no reason given why the county cannot also provide in its general fund for the payment of any necessary expenses of the nature here shown, independently of the cash "court fund" set up by the 1933 Act, supra.

The judgment of the Court of Tax Review denying the protest in that regard is affirmed.

BAYLESS, C. J., and OSBORN, CORN, and DAVISON, JJ., concur.